IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAIME LOREE ARMIJO, on behalf of herself and all others
similarly situated,

    Plaintiff,

v.                                                            Civil No. _____

FEDEX GROUND PACKAGE SYSTEM, INC.,
a foreign company,

    Defendant.

## CLASS ACTION COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Jaime Loree Armijo, on her own behalf and on behalf of all others similarly situated, by and through undersigned counsel, and asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION

1.     FedEx Ground Package System, Inc. (hereafter, "FedEx Ground") has fought – and largely lost – a 15-year-plus battle with its drivers over their correct classification as employees or independent contractors. For reasons mostly relating to securing business advantages over competitors, FedEx classified its drivers as independent contractors, which in turn forced the drivers to carry most of the expenses relating to courier overhead. Over the last five years, this classification status has been consistently rejected by various courts. *See, e.g., Slayman v. FedEx Ground Package Sys.,* 765 F.3d 1033 (9th Cir. 2014); *Craig v. FedEx Ground Package Sys.,* 335 P.3d 66 (Kan. 2014) (*per curiam*); *Alexander v. FedEx Ground Package Sys.*, 765 F.3d 981 (9th Cir. 2014). The quantity of litigation arising from FedEx Ground's

claimed status of its drivers is the byproduct of the operating agreements it entered into with its drivers. As the District of Kansas has explained, FedEx Ground "carefully structured its drivers' operating agreements so that it could label the drivers as independent contractors … to avoid the additional costs associated with employees. In other words," the question is close "by design." *Craig,* 335 P.3d at 72-73.

2. This lawsuit is the first brought by New Mexico FedEx Ground drivers challenging the independent contractor status claimed by FedEx Ground. Two legal claims, both unique to New Mexico, are asserted.

3. *First*, New Mexico FedEx Ground drivers seek recovery under New Mexico's unauthorized deduction statute, NMSA 1978, § 14-13-11(A), which provides:

> All assignments of wages or salaries due or to become due to any person, in order to be valid, shall be acknowledged by the party making the assignment before a notary public or other officer authorized to take acknowledgments. The assignment shall be recorded in the office of the county clerk of the county in which the money is to be paid and a copy served upon the employer or person who is to make payment.

By taking deductions from its drivers every week, FedEx Ground violates this statute with every check to Ground drivers for their work performed.

4. *Second,* New Mexico's overtime law, NMSA 1978, § 50-4-22(D) (2008), requires that for those hours over 40 worked in a week, employees shall be paid time-and-a-half their regular hourly rate. The statute also permits only a limited use of wage deductions: "An employer furnishing food, utilities, supplies or housing to an employee who is engaged in agriculture may deduct the reasonable value of such

furnished items from any wage due to the employee." *Id.*, § 50-4-22(B). These rights cannot be waived: "The Minimum Wage Act conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy, without regard to a worker's relationship with a union or her or his contract with the employer. ... These rights are nonnegotiable, meaning that they cannot be waived by private law, including the worker's and the employer's mutual agreement." *Self v. UPS*, 1998-NMSC-046, ¶ 14, 970 P.2d 582, 588.

5. There is no exception to the New Mexico overtime law applicable to FedEx Ground drivers.

6. Private enforcement of the overtime statute is granted via NMSA 1978, § 50-4-26 (2013). Among other things, the statute provides for a private cause of action, mandatory liquidated damages equal to twice the underpaid wages, attorney's fees to a prevailing plaintiff (but not to a prevailing defendant), injunctive relief, and a requirement that actions brought under the statute "shall be heard by the court at the earliest possible date and shall be entitled to a preference over all other civil actions…" The statute of limitations for such claims is three years. NMSA 1978, § 37-1-5 (2009).

7. Because Plaintiff's working conditions are materially identical to her coworkers', this lawsuit is brought as a class action.

### JURISDICTION AND VENUE

8. This Court has jurisdiction in this matter via 28 U.S.C. § 1332, as the amount in controversy exceeds $5 million and there is at least one class member diverse in citizenship from the defendant.

9. Venue is appropriate in this district because Plaintiff is a citizen of New Mexico, this class involves FedEx Ground drivers who operated out of FedEx's New Mexico terminal, and most (if not all) of FedEx Ground's breaches took place within this judicial district.

**PARTIES**

10. Plaintiff Jaime Loree Armijo is a citizen of the state of New Mexico, within this judicial district. On July 27, 2013, Plaintiff executed a contract with FedEx Ground to work as a "pickup and delivery contractor." **Exhibit 1** is a true and correct copy of Plaintiff's 7/27/13 FedEx Ground contract.

11. Defendant FedEx Ground Package System, Inc., is a Delaware corporation with its principal place of business in Pennsylvania. On information and belief, FedEx Ground is a citizen of Pennsylvania in that it principally operates out of that state and its headquarters are located within that state. FedEx Ground Package System, Inc. is a part of the family of corporations owned by Federal Express Corporation.

12. In this Complaint, FedEx Ground is specifically defined as the named defendant and all successor, predecessor, related and subsidiary entities to which these allegations pertain.

13. For most of her tenure at FedEx Ground, Plaintiff routinely worked 60 hours a week, or more. Because Plaintiff and class members turn on their FedEx-supplied scanner as the first thing they do when they are ready to leave the terminal, and turn off their scanner as the last thing they do when their shift ends, FedEx has a record of the hours worked by Plaintiff and all other class members.

14. The FedEx Ground contract was unilaterally amended by FedEx many times during Plaintiff's tenure as a driver. At some point on or after April 2, 2016, FedEx canceled the contracts of all New Mexico drivers and replaced their contracts with a new "agreement" that included a requirement that all drivers must purchase at least five FedEx routes (hereafter referred to as the "FedEx replacement contract").

15. This case only involves those claims arising out of the standard contract attached as **Exhibit 1** (Plaintiff Armijo's 7/27/13 contract with FedEx Ground)**.** This case does not bring claims arising out of drivers' performance of the FedEx replacement contract (a copy of which is not attached, as Plaintiff Armijo left FedEx Ground on April 2, 2016, before the replacement contract was instituted) .

16. FedEx Ground required Plaintiff and class members to create and maintain a corporate entity in order to operate as contractor. *Id.*, Addendum 16. Accordingly, Plaintiff created "Jaimes Elegant P & D Corporation" and executed the FedEx Ground contract as the sole owner/operator of that entity.

## FACTS

A. **New Mexico employee status test**

17. When determining whether a worker is an "employee" protected by the New Mexico wage laws, New Mexico courts look to the "economic realities" of the relationship.  Under the economic realities test, or any test for "employee status," Plaintiff and other FedEx Ground drivers are employees of Defendant.

5

**B.     The economic realities of the relationship demonstrate that FedEx Ground drivers are employees not independent contractors**

18.     Invoking the factors New Mexico courts apply demonstrates that Plaintiff and the described class members are employees of FedEx Ground.

19.     FedEx Ground controls the terms and conditions of plaintiffs' employment. FedEx Ground's drivers are a permanent and important part of its business. They work every day that FedEx Ground delivers packages, for 9.5 to 11 hours per day. They are overseen by FedEx-employed managers, who evaluate their job performance and may refuse to let them work. Therefore, they are employees under the economic-realities test.

**C.     FedEx Ground has the right to control the means and manner of drivers' work, and exercises that control**

20.     FedEx Ground requires all newly hired drivers to execute a standard agreement; a driver's failure to comply with the agreement is grounds for termination. *Id.*, p. 18 of 23, ¶ 12.1. Accordingly, FedEx Ground can require compliance with its instructions by threatening termination.

21.     Though the contract purports to grant drivers some discretion, a closer look at the contract negates the notion that the drivers have any room for discretion in the manner and means of performing their jobs. *see, e.g., Id.*, pp. 1, 7, 16 of 23, Att. 7.1 to Addendum 7. FedEx Ground's directions include: delivery days and times; delivery methods; reporting requirements; vehicle identification, specifications, and maintenance; and driver appearance. FedEx Ground endeavors to control every detail of a driver's performance, including the color of socks and the style of hair. *See, e.g., Id.*, pp. 3 & 6 of 23, at ¶¶ 1.5 & 1.12.

22.     FedEx Ground drivers cannot exercise their independence by modifying their contract to their advantage. Thus, the document more closely resembles a unilaterally proffered, take-it-or-leave-it employment contract. *See, e.g., Id.*, pp. 9, 13, 15, 16, 22 of 23. In addition, the contract is not the sole source defining a driver's relationship with the company. There are manuals, handbooks, memoranda, training videos, and other means of communication that direct the manner and means of delivering packages for FedEx Ground. In short, the procedure by which a driver becomes qualified to deliver packages for FedEx Ground more closely resembles the process for hiring employees, not the process for negotiating independent contractor agreements.

23.     With respect to a driver's appearance, the contract requires drivers to "wear a FedEx Ground-approved uniform, maintained in good condition," and to "keep his/her personal appearance consistent with reasonable standards of good order as maintained by competitors and promulgated from time to time by FedEx Ground." *Id.*, p. 6 of 23, ¶ 1.12.  The notion that such requirements are merely unenforceable suggestions is negated by the fact that FedEx Ground reserves the right to refuse to allow drivers to perform deliveries unless properly dressed or groomed.

24.     FedEx Ground requires drivers to comply with strict requirements for vehicle appearance, specification, and maintenance. For example, each vehicle must be painted "FedEx White" and bear FedEx Ground's logos and advertising. The trucks must be "maintained in a clean and presentable fashion free of body damage and extraneous markings." FedEx Ground reserves the right to inspect trucks to

ensure they comply with FedEx Ground's appearance standards. The vehicles must meet FedEx Ground's minimum specifications for height, width, length, bumper height, interior shelving requirements, and (in some cases) age restrictions. FedEx Ground decides what size and configuration of truck is appropriate for a particular route. FedEx managers may remove a vehicle from service if it does not meet appearance standards or if a driver fails to timely submit maintenance reports. Failure to comply with the vehicle appearance standards constitutes a breach of the contract, which can result in termination by FedEx Ground. *See Id.*, pp. 3, 5, & 6 of 23, ¶¶ 1.5, 1.10(e), & 1.12.

25. The FedEx Ground contract provides strict requirements with regard to the handling and delivery of packages. Drivers are required to "handle, load, unload and transport packages using methods that are designed to avoid theft, loss and damage." *Id.*, p. 5 of 23 at (c).) In addition, the FedEx Ground contract provides that drivers agree to "[c]ooperate with FedEx Ground's employees, customers and other contractors, to achieve the goal of efficient pick-up, delivery, handling, loading and unloading of packages and equipment, and provide such electronic and/or manual data pertaining to package handling as is reasonably necessary to achieve this goal." *Id.***,** p. 5 of 23 at (d).

26. FedEx Ground requires drivers to record information on all package deliveries. FedEx Ground utilizes multiple oversight methods for the contract's handling and delivery requirements. In other words, FedEx Ground supervises drivers to assure that the designated manner and means of delivering packages are being followed. Specifically, FedEx managers are to conduct daily van service audits

of every driver to ensure compliance with FedEx Ground's procedures for undelivered packages. Failure to follow FedEx Ground's procedures for proper release of packages may constitute a breach of the contract, resulting in termination.

27. FedEx Ground hires experts to perform random security reviews to ensure that drivers are securing their vehicles properly when delivering packages. Failure to properly secure a vehicle is also considered a violation of the FedEx Ground contract.

28. FedEx Ground requires at least two, but not more than four, customer service rides each year. *Id.*, pp. 6 & 13 of 23, ¶¶ 1.14 & 5.2. The customer service rides provide FedEx managers with the opportunity to see if drivers are complying with FedEx Ground's customer service standards and ensure that drivers are operating their vehicles safely. FedEx managers are trained to record observations during a customer service ride, including: drivers' check-in and check-out procedures; how drivers operate, park, enter and exit their vehicles; drivers' delivery and pickup methods; and whether drivers experience any delay time in performing their work. In addition, the FedEx manager is supposed to make multiple specific written observations regarding the driver's performance in the areas of package quality at delivery, quality assurance, driver release, professional appearance, customer courtesy, and service. During some of the customer service rides, FedEx managers analyze the driver's primary service area and document details including: the time the driver arrives and departs from each stop; the number of minutes at each stop; the number of minutes between stops; the last three digits of the driver's odometer reading at each stop; and the approximate

distance a driver must walk to pick up or deliver a package.

29.     FedEx managers are expected to conduct at least two "business discussions" with drivers each year. The business discussions are considered procedures and not mandatory policies. The business discussions are designed to allow FedEx managers to provide recommendations and counseling to drivers in performing their contracted work. A FedEx manager may request a business discussion for multiple reasons, including problems with the driver's performance related to undelivered packages, missed pickups, and improper documentation. Although FedEx Ground may not force drivers to participate in a business discussion, failure to participate may reflect poorly on drivers' opportunities to renew their contracts. Moreover, documentation from business discussions is used to support contract termination.

30.     Further, FedEx managers are encouraged to conduct a "business plan" discussion with drivers each year. During the documented discussion, FedEx managers review problem areas, agreed-upon solutions, delivery areas, and driver expectations. A FedEx business plan discussion form provides spaces for the manager to document the following information: the driver's total number of stops, packages, miles, and DOT (Department of Transportation) hours of work; anticipated changes in the driver's primary service area; the condition and appearance of the driver's equipment; any deficiencies and expected correction dates; the number and types of complaints the driver has received in the last 12 months; the driver's contingency plan in the event of a vehicle breakdown; and any comments or questions the driver may have.

**Drivers' work is an integral part of FedEx's business**

31.     The work that the FedEx Ground drivers perform -- the pick-up and delivery of packages -- is essential to FedEx Ground's core business.

**The Driver's relative investment in tools and equipment pales
in comparison to the investment of Defendant**

32.     Most drivers use tools, instrumentalities, and services supplied by FedEx Ground -- by participating in deductions from FedEx Ground's Business Support Package/Contractor Assistance Program – including: marketing, uniforms, scanners, shipping documentation, and DOT (Department of Transportation) inspections. *See Id.*, pp. 6 & 15 of 23, ¶¶ 1.13 & 7, & Addendum 7.

33.     Though drivers have some investment in their tools and equipment (including for many drivers, their delivery vehicle), this investment is minimal when compared to the millions of dollars invested by FedEx in advertising, paying management and other employees, and maintaining delivery facilities across the entire United States.

**Drivers have no ability to affect their profit or loss through managerial skill**

34.     FedEx Ground unilaterally controls the price paid by the customer for each delivery.

35.     FedEx Ground unilaterally determines the amount that the drivers are paid for each delivery, which is essentially a piecerate for each job performed but has some variable components determined by FedEx Ground. *See, e.g., Id.* at Addendum 3.

36.     Drivers are required to perform any delivery assigned by Defendant, even if it is outside their normal "territory," and the driver believes that the delivery

11

will not be profitable (e.g., driving 1.5 hours round-trip to deliver one package that is on another Driver's route).

37. Defendant also maintains the right, and exercises its right, to take away any delivery from inside a driver's defined "territory" and assign it to a different driver.

38. If drivers wish to hire a "helper" to assist them in their work, FedEx Ground has the final say over whom they may hire.

### Minimal skill is required for drivers to perform the work

39. FedEx Ground drivers need no experience to get the job in the first place and the only required skill is the ability to drive.

### Drivers usually have a long and exclusive relationship with FedEx Ground

40. Plaintiff operated the same single route or territory for Defendant for three years, and most other FedEx Ground drivers worked for Defendant for several years. The agreement that FedEx Ground required all drivers to sign was for a term of one-year.

41. Thus, drivers hold permanent, full-time positions and cannot realistically pursue other business opportunities. While delivering Defendant's packages, they are forbidden from using their vehicles for any other purpose. *See, e.g., Id.*, p. 2 of 23, ¶ 1.4. Drivers also cannot realistically use their vehicles for any business purpose other than for Defendant, because Defendant requires that Drivers' vehicles bear a FedEx Ground logo, and Defendant prohibits use of the vehicle for any activity not authorized by Defendant while the logo is visible.

## Other Considerations

42. FedEx Ground's business is to take a package from one person or entity and deliver it to another person or entity. FedEx Ground does not manufacture or sell any product or perform any other service. When FedEx Ground drivers deliver packages, they have performed the sole service that FedEx Ground offers. Without the delivery drivers, there is no FedEx Ground business. In short, Plaintiff and all other class members are integrated into FedEx Ground's business to the highest degree possible, and this factor weighs heavily in favor of an employer/employee relationship.

43. FedEx Ground's drivers provide the core function of FedEx Ground's business. Thus, FedEx Ground is in business, and businesses do not ordinarily trust their core functions to independent contractors over whom the business has minimal control.

## CLASS ALLEGATIONS

44. Plaintiff brings this lawsuit on her own behalf and on behalf of the following class: all individuals who worked for defendant FedEx Ground System, Inc., and/or its subsidiary, FedEx Home Delivery, Inc., in New Mexico as package pick-up and delivery drivers pursuant to a Standard Operating Agreement and who were classified as "independent contractors," thereby depriving them of various protections under New Mexico law.

45. The named plaintiff will adequately represent the class because she was treated by FedEx Ground in the same manner as other class members. FedEx Ground's misclassification, and resulting violation of New Mexico law, damaged

Plaintiff in the same manner as other class members.

46. There are common questions of law and fact applicable to the entire class, including the question of whether Plaintiff and other class members are entitled to certain types of statutory protections as FedEx Ground employees, as defined by common and statutory law.

47. This case should be certified as a class action pursuant to Fed. R. Civ. P. 23 because the common questions of law and fact concerning FedEx Ground's liability predominate over any individual question as to the amount of damages to each person in that:

> a. The members of the class are so numerous that their individual joinder in a single action is impossible and/or impracticable;
>
> b. The central questions of law and fact involved in this action are of a common or general interest and those common legal and factual issues predominate over any questions affecting only individual members of the class. Among the common questions of law and fact are the following:
>
>> i. Whether class members have been misclassified as independent contractors;
>>
>> ii. Whether FedEx Ground has violated its legal obligations under various provisions of New Mexico law;
>>
>> iii. Whether injunctive and declaratory relief and an equitable accounting are proper.

48.     Individual litigation of all claims that might be asserted by all class members would produce a multiplicity of cases that would congest for years the judicial system having jurisdiction of the claims.  By contrast, class certification provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of FedEx that is similar as to all class members.

49.     Certification of the class would allow litigation of claims that may be of an insufficient amount to support separate actions, in view of the expense of the litigation.

50.     The claims of the named plaintiff are identical to the claims of other members of the class. The named plaintiff shares the same interests as other members of the class in this action because, like other class members, FedEx Ground's wrongful misclassification caused Plaintiff and each class member to each suffer financial loss of thousands of dollars.

51.     The named plaintiff is committed to vigorously prosecuting this action. She has retained competent and experienced counsel to represent her and the class.

52.     A class action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it impracticable for class members to seek individual redress for FedEx's wrongful conduct.

### Count 1
### Violation of NMSA 1978, § 50-4-22 (2008), New Mexico's Overtime Law

53.     Plaintiff restates paragraphs 1–52 as if fully set forth.

15

54. Plaintiff's first claim is brought for FedEx Ground's violation of NMSA 1978, § 50-4-22 (2008). It is brought under New Mexico statutory law.

55. The class period for this claim begins three years before the date this action commenced. *See* NMSA 1978, § 37-1-5 (2009).

56. Under NMSA 1978, § 50-4-22(D) (2008), all New Mexico employees (with limited exceptions not relevant here) are entitled to be paid at time-and-a-half their regular hourly rate for all hours above 40 worked in a week.

57. The exceptions to this protection at NMSA1978, § 50-4-24 (2013) do not apply to Plaintiff or to other class members.

58. The overtime protections may be enforced civilly through NMSA 1978, § 50-4-26 (2013). The statute provides a private right of action for violation of the overtime protections, mandatory liquidated damages equal to twice the underpaid wages, attorney's fees to a prevailing plaintiff, injunctive relief, and a requirement that actions brought under the statute "shall be heard by the court at the earliest possible date and shall be entitled to a preference over all other civil actions."

59. Plaintiff and the class members, who are properly classified as FedEx Ground employees, are entitled to protection under the statute. They each have been deprived overtime pay for their hours over 40 worked in a week.

### Count 2
### Violation of NMSA 1978, § 14-13-11,
### New Mexico's Unauthorized Deduction Statute

60. Plaintiff restates paragraphs 1-52 as if fully set forth.

61. Plaintiff's second claim is for violation of NMSA 1978, § 14-13-11. It is brought under New Mexico statutory law.

62. The class period for this claim begins four years before the date this action commenced. *See* NMSA 1978, § 37-1-4.

63. Under NMSA 1978, § 14-13-11(A):

> All assignments of wages or salaries due or to become due to any person, in order to be valid, shall be acknowledged by the party making the assignment before a notary public or other officer authorized to take acknowledgments. The assignment shall be recorded in the office of the county clerk of the county in which the money is to be paid and a copy served upon the employer or person who is to make payment.

64. Because Plaintiff and class members are employees, they are entitled to the protections of this statute.

65. With each paycheck (which Fedex Ground calls a "settlement statement"), FedEx Ground withholds certain amounts due to Plaintiff and class members. This withholding is an "assignment of wages or salaries" and thus subject to NMSA 1978, § 14-13-11.

66. FedEx Ground violates the requirements of NMSA 1978, § 14-13-11 with each "settlement statement" paid to Plaintiff and class members.

67. Under NMSA 1978, § 14-13-11, FedEx Ground's withholdings are void. Plaintiff and class members are entitled to be reimbursed by FedEx Ground for all amounts FedEx Ground withheld in violation of New Mexico law.

## Count 3
## Unjust Enrichment

68. Plaintiff restates paragraphs 1-52 as if fully set forth.

17

69. Plaintiff's third legal claim is for unjust enrichment. It arises under the common law.

70. The class period for this claim begins four years before the date this action commenced. *See* NMSA 1978, § 37-1-4.

71. Defendant FedEx Ground has been financially enriched by subjecting Plaintiff and other class members to deductions, charges, and/or expenses that typically are borne by the employer (including many of FedEx Ground's business competitors).

72. The financial enrichment enjoyed by FedEx Ground has come at the expense of Plaintiff and other class members, all of whom have borne the improper deductions, charges and/or expenses.

73. It is against equity and good conscience to permit Defendant FedEx Ground to retain such improper deductions, charges and/or expenses, and it is against the public policy of New Mexico for FedEx Ground to benefit from these unlawful deductions from their employee's wages.

74. Defendant FedEx Ground should be required to reimburse Plaintiff and other class members for such improper deductions, charges and/or expenses under the doctrine of unjust enrichment.

**WHEREFORE**, Plaintiff and all other class members respectfully request the following relief:

    A. Certification of the above-described class with the appointment of Plaintiff as the class representative and the undersigned attorneys as class counsel;

B. A declaration that FedEx Ground has violated both NMSA 1978, § 50-4-22 (2008) (New Mexico's overtime law) and NMSA 1978, § 14-13-11 (New Mexico's unauthorized deduction statute);

C. An award of overtime pay to Plaintiff and to class members for all hours over 40 worked per week for each week during the class period;

D. Liquidated damages equaling two times the overtime payments due to Plaintiff and all class members;

E. An award of all amounts withheld by FedEx Ground in violation of NMSA 1978, § 14-13-11;

F. Reimbursement of all charges, deductions and expenses;

G. An award of attorneys' fees and reasonable costs incurred in the prosecution of this action;

H. All other relief this Court finds appropriate and equitable including payment of reasonable fees, costs, and interest where permitted by law.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff and all other class members demand a trial by jury on all issues that may be so tried.

    Respectfully submitted,

    BAUMAN, DOW & STAMBAUGH, P.C.
    */s/ Christopher P. Bauman*
    Christopher P. Bauman
    Cynthia L. Weisman
    P.O. Box 30684
    Albuquerque, NM 87190
    Tel. (505) 883-3191
    Fax (505) 883-3194
    cpb@bdsfirm.com
    cw@bdsfirm.com

      and
LICHTEN & LISS-RIORDAN, P.C.
Harold L. Lichten
Matthew Thomson
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. 617-994-5800
Fax: 617-994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com
      and
BERGER & MONTAGUE, P.C
Shanon J. Carson
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Tel. 215-875-3053
scarson@bm.net
sschalman-bergen@bm.net
      and
JORDAN LEWIS, P.A.
Jordan Lewis
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel. 954-616-8995
Fax: 954-206-0374
Email: jordan@jml-lawfirm.com

*Counsel for Plaintiff Armijo and All Other Class Members*