# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAIME LOREE ARMIJO, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.                                     Case No.: 1:17-cv-00440-LF-KK

FEDEX GROUND PACKAGE SYSTEM, INC.,
a foreign company,

    Defendant.

**FEDEX GROUND PACKAGE SYSTEM, INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Plaintiff Jaime Loree Armijo's Response to Defendant FedEx Ground's Partial Motion to Dismiss ("Plaintiff's Response") provides this Court with no sound basis to allow her claims to proceed. Plaintiff spends a significant portion of her response reciting immaterial allegations of alleged improper control exerted by FXG over its contractors. FXG of course disputes Plaintiff's allegations, and disputes Plaintiff's recitation of supposed victories in other states while ignoring FXG's victories, but will not address them here because they are not appropriately before the Court in deciding FXG's motion to dismiss. Plaintiff is attempting to distract the Court from her failure to address the weaknesses of her claims.

First, Plaintiff's response assumes that section 14-13-11 creates a remedy for employees, which it does not. In doing so, Plaintiff fails to reconcile her claim under the purported "unauthorized deductions statute" with the conflicting requirements of New Mexico's wage and hour law. Second, Plaintiff's defense of her equitable unjust enrichment claim asks the Court to ignore longstanding New Mexico law prohibiting unjust enrichment claims where the claims arise out of a contract. Finally, Plaintiff asks the Court to rewrite the clear language of New Mexico's Minimum Wage Act ("MWA") to incorporate a remedy that does not exist there. Liquidated damages are not available under the MWA for overtime claims; thus, Plaintiff's request for those damages must be stricken and FXG's partial motion to dismiss should be granted.

**ARGUMENT**

**I.     SECTION 14-13-11 DOES NOT CREATE A REMEDY FOR EMPLOYEES**

Plaintiff attempts to defend her pleading of an inapplicable statute in Count II by casting section 14-13-11 as a "remedial statute" for employees to recover deductions; however, the

1

statute contains no remedy whatsoever. Plaintiff further attempts to sidestep section 14-13-11's clear conflict with New Mexico's wage and hour law and instead asks the Court to look to an inapposite Indiana statute for guidance. Plaintiff's arguments fail.

**A.     Section 14-13-11 Is Not a Remedial Statute and Creates No Private Right of Action to Recover Deductions**

Section 14-13-11 is not a remedial statute as there is no indication the New Mexico legislature intended for it to provide a remedy to employees, let alone as an "unauthorized deductions statute." On its face, section 14-13-11 creates no remedy or individual cause of action to allow employees to recover improper deductions. Specifically, section 14-13-11 states that

> [a]ll assignments of wages and salaries due or to become due to any person, in order to be valid, shall be acknowledged by the party making the assignment before a notary public or other officer authorized to take acknowledgments. The assignment shall be recorded in the office of the county clerk of the county in which the money is to be paid and a copy served upon the employer or person who is to make payment.

N.M. Stat. Ann. § 14-13-11.

Section 14-13-11 provides a procedure for the proper assignment of wages to a third party and lacks any express right for an individual to recover if there is a violation of that statute; rather, it simply results in a void assignment if not followed. It is, in this respect, similar to section 50-4-2 in that it outlines requirements that do not, on their own terms, create an individual cause of action. *See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 674 (D.N.M. 2015) ("In fact, there is no case law authorizing a private cause of action under § 50-4-2(b) for wages of disputed compensability."). In the absence of language creating an express right of recovery under section 14-13-11, it would be improper for the Court to conclude one exists. *See Eisert v. Archdiocese of Santa Fe*, 207 P.3d 1156, 1165 (N.M. Ct. App. 2009)

("Because there is no express language in the statute creating a private right of action, we conclude that the Legislature did not intend to create such a right of action.").

Employees seeking to recover wages under section 50-4-2 are instead granted a private right of action in section 50-4-26(C). N.M. Stat. Ann. § 50-4-26 ("an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages..."); *Bustillos*, 310 F.R.D. at 674. The private right of action, however, is limited to recovery of wages guaranteed under the MWA. *Bustillos*, 310 F.R.D. at 674. There is no reference to any right of action to recover for purported "unauthorized deductions" under section 14-13-11. *Id.*

An interpretation recognizing a private right of action under the assignment statute, section 14-13-11, would be particularly inappropriate here because it would directly contradict the provisions of New Mexico's labor law that do expressly address payroll deductions and the right of action under the MWA. *See Bustillos*, 310 F.R.D. at 674 ("New Mexico labor statutes provide mechanisms to sue for wages in dispute, unpaid overtime, and minimum wages."). Employment matters are governed under Chapter 50, Article 4 of the New Mexico statutes. Section 50-4-2 directly addresses the payment of wages by an employer and specifically sets out the minimum requirements for all wage deductions. N.M. Stat. Ann. § 50-4-2(B).[1] These

---

[1] Even if the Court were to accept Plaintiff's argument that simple wage deductions qualify as an "assignment of wages" under section 14-13-11, Plaintiff's claim would still fail under the general-specific rule of statutory construction. *State v. Cleve*, 980 P.2d 23, 30 (N.M. 1999) ("This rule in effect treats the special law as an exception to the general law because the Legislature is presumed not to have intended a conflict between two of its statutes and because the Legislature's attention is more particularly directed to the relevant subject matter in deliberating upon the special law."). Section 14-13-11 would be a general statement on the requirements of assignments of wages from which section 50-4-2 specifically exempts employer deductions.

requirements are expanded on in New Mexico's administrative code, which also does not call for the recording of a deduction with a county clerk or service on an employer. Wage and Hour and Employment of Children, New Mexico Dept. of Workforce Solutions, 11.1.4.7(M) NMAC, 6/30/2008. Instead, deductions are to be made pursuant to a "written authorization" by the employee. *Id.* A "written authorization" is defined as

> a document an employee signs at the time of hiring, giving the employer permission to deduct certain items from his pay. A written authorization is not needed for an employer to deduct an advance or over-payment of wages; however the employer must pay at least minimum wage times the hours worked to the employee.

*Id.* No reference to assignments generally or section 14-13-11 specifically is found within these provisions.[2] Plaintiff's interpretation of section 14-13-11 is not just "unexamined," it is wrong and must be rejected.

### B.   Plaintiff's Citation to Indiana Law Supports FXG's Argument that Section 14-13-11 Does Not Apply to Plaintiff's Claims

Plaintiff's citation to the Indiana Code offers the Court no valuable or even applicable guidance. Unlike section 14-13-11, which is part of New Mexico's law on acknowledgements and oaths, Indiana Code 22-2-6-1 is in fact a provision within Indiana's wage and hour law. *See* Ind. Code Ann. § 22-2 *et seq.* More importantly, section 22-2-6-1 <u>expressly defines a routine wage deduction as an assignment</u> within the context of Indiana's wage and hour law. Ind. Code Ann. § 22-2-6-1. In sharp contrast, section 14-13-11 speaks only to the assignment of wages and salaries generally, making no mention of routine wage deductions taken by an employer from an employee's paycheck. *Compare* Ind. Code. Ann. § 22-2-6-1 *with* N.M. Stat. Ann. § 14-13-11.

---

[2] In fact, the only reference to section 14-13-11 found anywhere within New Mexico's wage and hour law is in section 50-4-11, which addresses the <u>assignment</u> of wage claims to the labor commissioner. N.M. Stat. Ann. § 50-4-11.

Later sections of Indiana's wage and hour law go on to define the parameters of the authorization needed for various types of routine wage deductions that are not at all contemplated within section 14-13-11 or any other provision of New Mexico's law on acknowledgments and oaths. *See* Ind. Code Ann. § 22-2-6-2. In fact, the language of section 14-13-11, if it was intended to apply as Plaintiff suggests, would confusingly require an employer to serve a copy of a document on itself. N.M. Stat. Ann. § 14-13-11 ("The assignment shall be recorded in the office of the county clerk of the county in which the money is to be paid and a copy served upon the employer or person who is to make payment.").

Section 14-13-11 has no application to Plaintiff's claim and references in inapplicable statutes do not in any way indicate an intention by New Mexico to apply section 14-13-11 in the fashion Plaintiff suggests. Count II of Plaintiff's Complaint must be dismissed.

## II. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS BARRED BY HER OPERATING AGREEMENT

Plaintiff's unjust enrichment claim, like all the claims in her complaint, is "grounded in the parties' contractual relationship." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005). Plaintiff acknowledges this expressly both in her complaint and in her response. (*See* Pl.'s Resp. at 2 ("This case only involves those claims arising out of the standardized contract (Ex. 1 to Compl., Doc. 1-1)."); Compl. ¶¶ 10, 15.) Where a "case only involves those claims arising out of the standard contract [attached to Plaintiff's complaint]"[3] an

---

[3] Again, FXG does not concede that Plaintiff Armijo executed the Operating Agreement in her individual capacity and her unjust enrichment claim fails regardless as her claims would still be governed by the terms and conditions of the contract, providing a "complete and adequate remedy at law." *See Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. CV 15-00218 WJ/CG, 2015 WL 12803775, at *5 (D.N.M. June 25, 2015) (granting motion to dismiss unjust enrichment claim where plaintiff had contractual claim against another party in the lawsuit).

5

unjust enrichment claim cannot stand (Compl. at ¶ 15; Pl.'s Resp. at 2). *See Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1276 (D.N.M. 2014) ("but the plaintiff cannot pursue the unjust enrichment claim unless there is something—bankruptcy, statutes—prohibiting the plaintiff from pursuing the contract claim"). Here, Plaintiff's unjust enrichment claim essentially seeks to rewrite various terms of her Operating Agreement with FXG on the grounds that the terms governing certain deductions and expenses were unfavorable. (Compl. ¶¶ 71-74.)

Plaintiff's complaint does not, as her response suggests, allege that the Operating Agreement is unenforceable or would be rendered unenforceable in the event she is determined to be a putative employee of FXG; thus, her unjust enrichment claim must fail. *See Abraham*, 20 F. Supp. 3d at 1285 (for unjust enrichment claim to survive motion to dismiss where a contract exists between the parties, the plaintiff is required "to make some showing as to why the contract claim is not viable"). And contrary to Plaintiff's response, a determination that Plaintiff was a putative employee of FXG would not automatically render the Operating Agreement unenforceable. New Mexico law does not prohibit employment contracts generally and courts are allowed to reform employment contracts to remove or revise objectionable provisions when possible. *See KidsKare, P.C. v. Mann*, 350 P.3d 1228, 1233 (N.M. Ct. App. 2015) (district court's reformation of covenant not to compete rendered it enforceable). Indeed, the Operating Agreement contains a "savings clause" specifically designed to allow the excision of any unenforceable terms. (*See* Compl., Ex. 1 at ¶ 15.)

The cases on which Plaintiff relies to support her unjust enrichment claim also are distinguishable. Unlike the Oklahoma and New York cases Plaintiff cites, *Burlington N. & Santa Fe Ry. Co. v. Grant* and *Padovano v. FedEx Ground Package Systems Inc.*, New Mexico does

not allow an unjust enrichment claim to proceed where the allegations are "grounded in the parties' contractual relationship." *See Elliott Indus. Ltd. P'ship*, 407 F.3d at 1117. The *Burlington Northern* case was decided under Oklahoma state law, which rejects outright the proposition that unjust enrichment claims cannot proceed when there is a contract. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) ("Oklahoma courts have squarely rejected this argument."). The *Padovano* case was decided under New York law where courts have determined that "a worker can state a claim for unjust enrichment even if the existence of a contract might ultimately preclude recovery on that claim." *Padovano v. FedEx Ground Package Sys., Inc.*, No. 16-CV-17-FPG, 2016 WL 7056574, at *6 (W.D.N.Y. Dec. 5, 2016). New Mexico provides no such exceptions.

In New Mexico, for Plaintiff's unjust enrichment claim to survive in the face of the Operating Agreement, she is required "to make some showing as to why the contract claim is not viable" in her complaint. *See Abraham*, 20 F. Supp. 3d at 1285. As Plaintiff's complaint contains no such showing, and her response incorrectly claims the Operating Agreement would be unenforceable if she were found to be an employee, Count III must be dismissed.

### III. THE MWA DOES NOT PROVIDE FOR LIQUIDATED DAMAGES FOR OVERTIME VIOLATIONS

In arguing she is entitled to liquidated damages under the MWA, Plaintiff asks the Court to rewrite section 50-4-26 to provide a remedy that the express terms of the statute do not provide. Plaintiff's request goes beyond a liberal interpretation of a remedial statute and would require the Court to act outside the proper boundaries of statutory interpretation.

The first rule in statutory interpretation is that "the plain language of a statute is the primary indicator of legislative intent." *Llena v. Montoya*, 299 P.3d 456, 459 (N.M. Ct. App.

2013). Courts must "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *Id.* Importantly, "courts are required to construe a phrase within a statute with reference to its accompanying words 'in order to avoid the giving of unintended breadth' to the statute." *Garcia v. Crossmark, Inc.*, 157 F. Supp. 3d 1046, 1053 (D.N.M. 2015) (quoting *United States v. Brune*, 767 F.3d 1009, 1022-23 (10th Cir. 2014)). Courts must "not read into a statute ... language which is not there, particularly if it makes sense as written." *Llena*, 299 P.3d at 459.

Section 50-4-26(C), though "not the model of clarity," does not require a court to read into it any additional unwritten terms to have the provision make sense. *Garcia*, 157 F. Supp. 3d at 1053. Section 50-4-26(C) provides that:

> an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid <u>minimum</u> wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages.

N.M. Stat. Ann. §50-4-26(C) (emphasis added). An "ordinary reading of the text demonstrates that the section provides for treble damages <u>solely</u> in the case of minimum wage violations." *Garcia*, 157 F. Supp. 3d at 1053 (emphasis in original). An employer who violates the minimum wage provisions of the MWA is liable to the employee for treble damages. *Id.* An employer who violates the overtime provision of the MWA is liable for the amount of unpaid overtime only. *Id.*

The court in *Rivera v. McCoy Corp.* acted against these cannons of statutory interpretation, choosing to write into the statute a term that was not present and that was not necessary for the statutory language to make sense as written. *Rivera v. McCoy Corp.*, CV No. 15-3 CG/GBW, 2017 WL 1901668, at *7 (D.N.M. Mar. 6, 2017). Unlike the cases cited in *Rivera*, the *Rivera* court was not interpreting the meaning of an ambiguous term as "minimum

8

wages" is not ambiguous within the context of the MWA. *Cf. New Mexico Dep't of Labor v. A.C. Elec., Inc.*, 965 P.2d 363, 368 (N.M. Ct. App. 1998) (holding that the phrase "required to work" was vague and included not only express orders but also implicit pressure to work overtime). Instead, the *Rivera* court added a new term, "overtime wages," and created a new class of damages that the Legislature did not include in the express language of section 50-4-26, without consideration as to what the language of the statute actually provides. *Rivera*, 2017 WL 1901668, at *7. There is no discussion in *Rivera* at all regarding how the statute operates and whether or not its terms are ambiguous as written. *See id.* Instead, the *Rivera* court expands the scope of the penalty without a reasoned basis. *Rivera* may be a more recent look at section 50-4-26, but it is a superficial one and not an example this Court should follow.

*Garcia* provides a much more in-depth and reasoned analysis of section 50-4-26(C) and reaches a result that is in line with the statutory language. Looking first at the plain language of the statute, the *Garcia* court found that section 50-4-26(C) does indeed make sense as written, as "the phrase 'shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest' defines the later term 'unpaid or underpaid wages,' which, in turn, describes the relationship of this section to § 50-422." *Garcia*, 157 F. Supp. 3d at 1053. The term "unpaid or underpaid wages" is therefore not ambiguous when read within the context of this section. *Id.* ("[C]ourts 'are required to construe a phrase within a statute with reference to its accompanying words "in order to avoid the giving of unintended breadth' to the statute." (quoting *United States v. Brune*, 767 F.3d 1009, 1022-23 (10th Cir. 2014)).

"Unpaid or underpaid wages" within the context of this provision therefore must be defined as "unpaid or underpaid <u>minimum</u> wages." *Id.* (emphasis in original) The *Garcia* court

also reinforced its reasoning with reference to yet another canon of statutory construction, *expressio unius est exclusio alterius*, as section 50-4-26(C) includes a specific reference to minimum wages yet is silent as to overtime. *Id.* Common sense and a plain reading of the statutory text suggests that such phrasing should be interpreted as an intentional omission of the unmentioned item. *Id.* (citing *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1312 (10th Cir. 2012)). Ultimately, the *Garcia* court concluded that as "'minimum wage and overtime 'go hand in hand' as items generally discussed together, the drafting of this statute raises the 'sensible inference that the term left out must have been meant to be excluded.'" *Id.* (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

As the *Garcia* court recognized, New Mexico courts will also look to the FLSA for help interpreting provisions of the MWA when necessary. *Id.* In doing so in interpreting section 50-4-26, the *Garcia* court found that the inclusion of an express reference to overtime in the similarly drafted liquidated damages provisions of the FLSA reinforced the exclusion of such damages under the MWA. *Id.* The court reasoned that the New Mexico Legislature had the language of the FLSA readily available when drafting section 50-4-26(C) and had they intended an analogous result (as the *Rivera* court assumed), they could have imported the necessary language. *Id.*

A court is not permitted to rewrite a statute to include remedies that the New Mexico Legislature intentionally omitted. *Llena*, 299 P.3d at 459-60. Therefore, Plaintiff's request for treble damages in her overtime claim must be stricken.

## **CONCLUSION**

For the above reasons and those stated in FXG's opening motion and brief, the Court should grant FXG's motion to dismiss.

Dated:  August 3, 2017               Respectfully submitted,

*s/ Jessica G. Scott*
Jessica G. Scott
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  (303) 244-1800
Facsimile:   (303) 244-1879
Email:  scott@wtotrial.com

Rebecca Shaw Kenny
Madison, Mroz, Steinman & Dekleva, P.A.
P.O. Box 25467
Albuquerque, NM  87125-5467
Telephone:  (505) 242-2177
Facsimile:   (505) 242-7184
Email:  rsk@madisonlaw.com

Attorneys for Defendant Fedex Ground Package System, Inc.

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on this 3rd day of August, 2017, a true and correct copy of the foregoing **FEDEX GROUND PACKAGE SYSTEM, INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS** was filed electronically on the C/M ECF website. Notice of this filing will be sent to the following counsel of record by operation of the Court's CM/ECF system.

- **Christopher P. Bauman**
  cpb@bdsfirm.com, drs@bdsfirm.com, mo@bdsfirm.com, sh@bdsfirm.com, lf@bdsfirm.com, cw@bdsfirm.com

- **Shanon J. Carson**
  scarson@bm.net

- **Jordan Lewis**
  jordan@jml-lawfirm.com

- **Harold L. Lichten**
  hlichten@llrlaw.com

- **Sarah R. Schalman-Bergen**
  sschalman-bergen@bm.net

- **Matthew Thomson**
  mthomson@llrlaw.com

- **Cynthia L. Weisman**
  cw@bdsfirm.com

*s/ Jessica G. Scott*
Jessica G. Scott