# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAIME LOREE ARMIJO, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.                                    No. CIV 17-0440 RB/KK

FEDEX GROUND PACKAGE SYSTEM, INC.,
a foreign company

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on FedEx Ground Package System, Inc.'s Motion to Dismiss in Part, filed on June 15, 2017. (Doc. 20.) Jurisdiction arises under 28 U.S.C. § 1332.[1] Having considered the submissions of counsel and the relevant law, the Court will **GRANT IN PART** the Motion as outlined below.

Plaintiff Jaime Loree Armijo drove a delivery truck for FedEx Ground Package System, Inc. (FedEx) for three years. During her tenure as a driver, she routinely worked substantial overtime hours, but because she was hired as an "independent contractor," FedEx was not obligated to pay her a penny of overtime. She was also responsible for a wide variety of business charges. Plaintiff, on behalf of herself and others similarly situated, now brings suit to dispute the legality of her relationship with FedEx and recover monetary damages to which she feels entitled.

---

[1] Plaintiff is a citizen of New Mexico, and FedEx is a Delaware corporation with its principal place of business in Pennsylvania. (Compl. ¶¶ 10–11.) There is no dispute regarding the amount in controversy, thus it appears jurisdiction appropriate under 28 U.S.C. § 1332.

## I. Background[2]

"On July 27, 2013, Plaintiff executed a contract with FedEx Ground to work as a 'pickup and delivery contractor'" (a "driver"). (*See* Doc. 1 (Compl.) ¶ 10; *see also* Doc. 1-1.) Plaintiff alleges that despite this contract, the terms and conditions of her employment were such that she and other drivers were employees of FedEx, not independent contractors. (*Id.* ¶¶ 17–41.) The question of whether Plaintiff was an independent contractor or an employee is not directly at issue in FedEx's Motion; consequently, the Court will assume for purposes of its analysis that Plaintiff can successfully demonstrate she was an employee of FedEx.

When Plaintiff was hired as a driver for FedEx, she signed a "Pick-up and Delivery Contractor Operating Agreement" (Operating Agreement). (*See id.* ¶¶ 1, 10; *see also* Doc. 1-1.) The Operating Agreement provides for certain deductions to be made from the driver's paycheck (referred to as a "settlement check" or a "settlement statement" (*see* Doc. 1-1 at 14–16)),[3] including, but not limited to, fuel products, a "Time-Off Program," and a "Business Support Package," which includes "uniforms, communications and data processing equipment, D.O.T. inspections, equipment washing, drug tests meeting D.O.T. requirements, and other items and services found in . . . Addendum 7" to the Operating Agreement. (*See id.* at 18–19, 37, 62, 70–75.) Plaintiff elected, at a minimum, to participate in the "Business Support Package." (*Id.* at 71–72.) The Operating Agreement also provides that FedEx "shall have no responsibility to make deductions for, or to pay wages, benefits, health, welfare and pension costs, withholding for

---

[2] The facts in this section are taken from Plaintiff's Complaint and the exhibit attached to the Complaint (the Operating Agreement). (*See* Compl; Doc. 1-1.) The Court will relate only those facts necessary to address this Motion to Dismiss.

[3] The Court uses the CM/ECF page numbering for the Operating Agreement, not the document's internal pagination.

income taxes, unemployment insurance premiums, payroll taxes, disability insurance premiums, social security taxes, or any other similar charges . . . ." (*Id.* at 15.)

Plaintiff alleges that "[f]or most of her tenure at FedEx Ground, [she] routinely worked 60 hours a week, or more." (Compl. ¶ 13.) Plaintiff did not receive overtime pay for any hours she worked over 40 in a week. (*Id.* ¶ 59.)

Plaintiff brings three claims against FedEx. First, she alleges that FedEx violated N.M. Stat. Ann. § 50-4-22(D) by not paying drivers overtime pay for hours worked over 40 in one week. (*Id.* ¶¶ 53–59.) Second, Plaintiff claims FedEx violated N.M. Stat. Ann. § 14-13-11, because it withheld certain amounts from each driver's paycheck in contravention of the statute. (*Id.* ¶¶ 60–67.) Third, Plaintiff asserts a common law claim for unjust enrichment. (*Id.* ¶¶ 68–74.) FedEx now moves to dismiss Plaintiff's second and third claims, as well as the claim for liquidated damages in Plaintiff's first claim for relief. (*See* Doc. 20 at 1.)

## II.    Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.)

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, *see Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192–93 (D.N.M. 2009) . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (internal citation omitted).

> Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

*Id.* at 1122–23 (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (internal quotation marks, alterations, and citations omitted)).

### III.    Count II: Plaintiff fails to state a claim for a violation of N.M. Stat. Ann. § 14-13-11.

Plaintiff's second claim revolves around certain deductions FedEx took from Plaintiff's paycheck. (*See* Compl. ¶¶ 60–67.) Plaintiff alleges that FedEx violated N.M. Stat. Ann. § 14-13-11 by taking deductions without following the process required by Section 14-13-11(A). (Compl. ¶¶ 60–67.) Section 14-13-11(A) provides:

> All assignments of wages or salaries due or to become due to any person, in order to be valid, shall be acknowledged by the party making the assignment before a notary public or other officer authorized to take acknowledgments. The assignment shall be recorded in the office of the county clerk of the county in

which the money is to be paid and a copy served upon the employer or person
who is to make payment.

N.M. Stat. Ann. § 14-13-11(A).

Count II is devoid of details regarding these deductions, but a generous reading of the Complaint and Operating Agreement shows that Plaintiff enrolled in FedEx's Business Support Package program and authorized FedEx to take daily deductions from her paycheck for certain business expenses. (*See id.* ¶¶ 32–33, 60–67; *see also* Doc. 1-1 at 70–72.) Plaintiff argues that she and all "class members are entitled to be reimbursed by FedEx Ground for all" such deductions held in violation of this statute. (*Id.* ¶ 67.) FedEx contends that any deductions taken from Plaintiff's paycheck are not properly defined as "assignments"; therefore, Section 14-13-11 is inapplicable to the facts of this case. (Doc. 20-1 at 5–7.) The Court agrees that Plaintiff fails to state a claim pursuant to Section 14-13-11.

## A.     Rules of Statutory Construction

Plaintiff can point to no case or regulation applying Section 14-13-11 in a similar situation. (*See* Doc. 30 at 8–10.) Because "no controlling state decision exists" on this issue, the Court "must attempt to predict what the state's highest court would do . . . ." *Coffey v. United States*, 870 F. Supp. 2d 1202, 1246 (D.N.M. 2012) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (internal quotation omitted)).

"When interpreting statutes, [a court's] responsibility is to search for and give effect to the intent of the legislature." *Cummings v. X-Ray Assocs. of N.M., P.C.*, 918 P.2d 1321, 1334 (N.M. 1996). A court's "understanding of legislative intent is based primarily on the language of the statute, and [the court must] first consider and apply the plain meaning of such language." *Id.* (citing *Roberts v. Sw. Cmty. Health Servs.*, 837 P.2d 442, 445 (N.M. 1992) (internal citation

omitted)). "This standard is sometimes called the 'plain meaning rule.'" *Id.* The "rule does not require a mechanical, literal interpretation of the statutory language." *Id.* (citing *D'Avignon v. Graham*, 823 P.2d 929, 931 (N.M. Ct. App. 1991) (internal citations omitted)). Courts must not rest "conclusions upon the plain meaning of the language if the intention of the legislature suggests a meaning different from that suggested by the literal language of the law." *Id.* (citing *Draper v. Mountain States Mut. Cas. Co.*, 867 P.2d 1157, 1159 (N.M. 1994) (internal citations omitted)). "If the strict wording of the law suggests an absurd result, [courts] may interpret the statute to avoid such a result." *Id.* (citing *New Mexico v. Gutierrez*, 854 P.2d 878, 879 (N.M. Ct. App.), *cert. denied*, 854 P.2d 872 (N.M. 1993) (internal citations omitted)). "When analyzing a statute from a particular statutory act," courts "must read the act in its entirety and construe all the provisions together and attempt to view them as a harmonious whole." *Id.* (citing *Roberts*, 837 P.2d at 445 (internal citation omitted)). "The plain meaning of particular statutory language will sometimes be modified when considered in the context of other statutes from the same act." *Id.*

### B. Interpretation of Section 14-13-11

Plaintiff asserts that a wage deduction is the same as a wage assignment; thus Section 14-13-11's requirement that "[a]ll assignments of wages or salaries due" be notarized and recorded applies to deductions taken by an employer. (Doc. 30 at 9.) An assignment is "[t]he act by which one person transfers to another, or causes to vest in that other, the whole of the right[,] interest, or property which he has in any realty or personalty, in possession or in action, or any share, interest, or subsidiary estate therein." (*Id.* (quoting *Assignment*, The Law Dictionary, available at https://thelawdictionary.org/assignment/).) Plaintiff believes this "definition easily covers the transaction at issue, which is FedEx's retention of certain sums otherwise payable to Armijo and

the class." (*Id.*) While the Court agrees that the plain meaning of "assignment" could possibly be construed to cover some of the deductions FedEx retained from Plaintiff's paycheck, it finds that such a meaning does not neatly fit within the larger context of the statutory scheme when read in its entirety. *See Cummings*, 918 P.2d at 1334.

Sections 14-13-1 through -25 are found in Chapter 14 of the New Mexico Statutes, which is entitled "Records, Rules, Legal Notices, Oaths" and includes articles such as the Preservation, Restoration and Destruction of Records (Article 1), Inspection of Public Records (Article 2), Recording (Article 8), Records Affecting Real Property (Article 9), Notary Public (Article 12a), and Electronic Authentication of Documents (Article 15). Section 14-13-11 is specifically found in the article on Acknowledgments and Oaths (Article 13). Article 13 also contains sections on Administration of Oath (Section 1), Oaths; Power to Administer (Section 3), and Validation of Certain Prior Acknowledgments (Section 24). Neither Article 13 nor Chapter 14 is relevant, as a whole, to employment relationships; Article 13 and Chapter 14 deal with recordings and notices. Section 14-13-11 sets out the legal requirements of one particular type of legal assignment of one's wages and the process by which such assignment shall be recorded in order to be valid.

The Court cannot find a definition of "assignment" in any section of Article 13. As FedEx notes (*see* Doc. 33 at 6), applying Section 14-13-11 to employer deductions would lead to strange results, as the statute requires that a copy of the assignment be "served upon the employer or person who is to make payment." N.M. Stat. Ann. § 14-13-11(A). The more logical interpretation of "assignments" is that it applies to transfers of a portion of the employee's wages to a third party, such as a creditor. In fact, Section 14-13-11 is cross-referenced under Section 35-12-7, which governs Garnishment; exemptions. N.M. Stat. Ann. § 35-12-7 (1978) (Repl. Pamp. 1996) and cross references thereunder. The "Cross References" notes following Section

35-12-7 specifically refer to Section 14-13-11: "[f]or acknowledgements for wage and salary assignments, see 14-13-11 NMSA 1978." *Id.* This reference sheds some light on a legislative intent to classify assignments not as employer deductions, but more likely as transfers to a third party. The Court finds Plaintiff's argument regarding the definition of "assignments" unavailing.

### C.    Reading Section 14-13-11 in Connection with Section 50-4-2

FedEx contends that Plaintiff should have brought her claim under Section 50-4-2, which governs "semimonthly and monthly pay days."[4] N.M. Stat. Ann. § 50-4-2(B). In relevant part, the statute provides:

> Except as provided by rules of the department of finance and administration for payment of salaries and wages to state employees, other than employees of institutions of higher education, promulgated pursuant to Section 10-7-2 NMSA 1978, **an employer shall pay wages in full, less lawful deductions and less payroll deductions authorized by the employer and employee**. Wages shall be paid in lawful money . . . , **without any reduction or deduction, except as may be specifically stated in a written contract of hiring entered into at the time of hiring**. An employer shall provide an employee with a written receipt that identifies the employer and sets forth the employee's gross pay, the number of hours worked by the employee, the total wages and benefits earned by the employee and an itemized listing of all deductions withheld from the employee's gross pay.

N.M. Stat. Ann. § 50-4-2(B) (emphasis added). Under Section 50-4-2(B), employers may deduct items as "stated in a written contract of hiring entered into at the time of hiring." *Id.* This statute appears to more closely align with the facts at issue here: in the "contract of hiring" Plaintiff and FedEx signed on July 27, 2013, Plaintiff agreed to have certain expenditures deducted from her paycheck. (*See* Doc. 1-1 at 18 ("At Contractor's election . . . FedEx Ground will provide a

---

[4] The Court recognizes that Plaintiff may not have a private right of action under section 50-4-2. *See, e.g., Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 674–75 (D.N.M. 2015) (noting "that the New Mexico Legislature did not intend to provide a private cause of action to recover wages in § 50-4-2(b)"). This conclusion does not change the Court's analysis.

Business Support Package to Contractor at a per van charge . . . which amount shall be deducted from Contractor's weekly settlement."), 70–72; *see also* Compl. ¶ 10.)

Where statutes "cover[] the same subject matter[,]" the New Mexico Supreme Court directs that they "be harmonized and construed together when possible . . . ." *State ex rel. Quintana v. Schnedar*, 855 P.2d 562, 564–65 (N.M. 1993) (seeking to harmonize statutes found in different chapters of the New Mexico statutes) (citing *Inc. Cty. of Los Alamos v. Johnson*, 776 P.2d 1252, 1253 (N.M. 1989)). Such a construction is not possible here, however, because the procedure mandated in Section 14-13-11 for assignments is inconsistent with the lesser requirements of Section 50-4-2. Where Section 14-13-11 requires notarization and recording of an assignment to be valid, Section 50-4-2(B) requires only that a payroll deduction be "specifically stated in a written contract of hiring entered into at the time of hiring." There is no mention of notarization or recording in Section 50-4-2.

If the Court were to construe "assignments" to include employer deductions specified in a "contract of hiring," then the statutes cover the same subject matter and are in conflict. Therefore, the Court turns to the general/specific rule of statutory construction. "The rule that a specific statute controls over a general statute dealing with the same subject matter applies only when the two statutes apply to the same conduct." *New Mexico ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1182 (N.M. Ct. App. 1987) (citations omitted). The general/specific rule only applies "when . . . two statutes are in conflict." *New Mexico ex rel. Madrid v. UU Bar Ranch Ltd. P'ship*, 114 P.3d 399, 404 (N.M. Ct. App. 2005) (citing *Citizens for Incorporation, Inc. v. Bd. of Cty. Comm'rs*, 858 P.2d 86, 92 (N.M. Ct. App. 1993) ("holding that the general/specific rule of statutory construction 'applies only when the statutory provisions are conflicting'") (internal citation omitted); *Stratton*, 737 P.2d at 1082 ("holding that '[i]n order for

a specific statute to prevail over the general, there must exist conflicting statutory provisions . . . such that a necessary repugnancy cannot possibly be harmonized'") (internal citations omitted)).

The Court finds that Section 50-4-2, which is found in the chapter of the New Mexico Statutes that deals with Employment Law, more specifically addresses the issue of deductions by an employer from an employee's paycheck. Section 14-13-11, nestled among a legislative scheme that is overwhelmingly unrelated to employment law, more generally addresses the discrete issue of an assignment of wages by an employee. Considering the legislative scheme of Sections 14-13-11 and 50-4-2, the Court believes that New Mexico courts would find that Plaintiff has not stated a claim under Section 14-13-11.[5] *See In re Grace H.*, 335 P.3d 746, 752–53 (N.M. 2014) (noting that "a statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter") (quotation omitted). Consequently, the Court will grant FedEx's Motion to Dismiss with respect to Count II, because Plaintiff has not pled facts sufficient "to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quotation omitted).

## IV. Count III: Plaintiff's claim for unjust enrichment fails.

In Count III, Plaintiff states a common law claim for unjust enrichment. (Compl. ¶¶ 68–74.) To prevail on a claim of unjust enrichment under New Mexico common law, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000) (citing *Restatement of the Law of Restitution* §§

---

[5] Plaintiff refers to an Indiana statute that "specifically *equates* deductions with assignments." (Doc. 30 at 10 (citing Ind. Code § 22-2-6-1).) As FedEx points out, however, this statute is a provision of Indiana's Minimum Wage Act and is more akin to Section 50-4-2 than it is to Section 14-13-11. (*See* Doc. 33 at 5 (discussing Ind. Code §§ 22-2-2-1–13).)

1, 40, 41 (1937, as supplemented through 1988)). Plaintiff alleges that FedEx "has been financially enriched by subjecting Plaintiff and other class members to deductions, charges, and/or expenses that typically are borne by the employer . . . ." (*Id.* ¶ 71.) Plaintiff contends that FedEx "should be required to reimburse Plaintiff and other class members for such improper deductions, charges and/or expenses under the doctrine of unjust enrichment." (*Id.* ¶ 74.) The Court finds that Plaintiff's claim for unjust enrichment must fail, because she did not make any showing in her Complaint "as to why [a] contract claim is not viable." *See Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1285 (D.N.M. 2014).

"New Mexico law strongly disfavors unjust enrichment claims when remedies exist under contract law." *Steadfast*, 2015 WL 12803775, at *4 (citing *Sims v. Sims*, 930 P.2d 153, 159 (N.M. 1996); *Dydek v. Dydek*, 288 P.3d 872, 883 (N.M. Ct. App. 2012); *Ontiveros*, 3 P.3d at 699; *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116–17 (10th Cir. 2005) (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997)); *Abraham*, 20 F. Supp. 3d at 1276, 1284–85; *see also Qwest Corp. v. City of Santa Fe*, No. 10-CV-0617 RB/KBM, 2013 WL 12241274, at *12 (D.N.M. Feb. 8, 2013) *order clarified*, 2013 WL 12241269, (D.N.M. Apr. 5, 2013) (noting that in New Mexico, "unjust enrichment is widely accepted as an alternative theory of recovery, should the factfinder determine that no contract between the parties exists") (citing *Starko Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252, 278 (N.M. Ct. App. 2011), *rev'd on other grounds* (N.M. 2014)). While there are at least two cases where the New Mexico Supreme Court allowed an unjust enrichment claim where the two parties were in privity of contract, the contracts in both cases were "concededly unenforceable." *Id.* (citing *Abraham*, 20 F. Supp. 3d at 1281–82 (discussing *Danley*

*v. City of Alamogordo*, 577 P.2d 418 (N.M. 1978); *Platco Corp. v. Shaw*, 428 P.2d 10 (N.M. 1967))).

In *Danley*, "the City of Alamogordo, New Mexico, hired a contractor to lay a six-inch water line for a developing subdivision, but then, after realizing that the City's future plans would eventually require a ten-inch water line, the City asked the contractor to lay a ten-inch water line instead, which the contractor did." *Abraham*, 20 F. Supp. 3d at 1281 (citing *Danley*, 577 P.2d at 419). "When the contractor presented the bill for the additional material costs, the City stipulated that the additional cost was reasonable, but it refused to pay the bill, because a statute required that the City solicit sealed bids for purchases . . . ." *Id.* (citing *Danley*, 577 P.2d at 419). "The Supreme Court of New Mexico permitted the contractor to pursue the unjust enrichment claim, but only because he could not pursue a contract claim; the statute prevented the City from entering a contract for the ten-inch water line without following the statutory procedure of obtaining sealed bids for the purchase." *Id.* at 1282 (citing *Danley*, 577 P.2d at 419).

In *Platco Corp.*, "the plaintiff could not enforce the contract he had with the defendants, because he performed the work in Arizona, he was not licensed as [a] contractor in Arizona, and Arizona law denied recovery to unlicensed contractors." *Id.* (citing *Platco Corp.*, 428 P.2d at 11). "The Supreme Court of New Mexico affirmed the district court's decision to permit the plaintiff to amend his complaint at the end of trial and allege that he was in a master-servant relationship with the defendants." *Id.* (citing *Platco Corp.*, 428 P.2d at 11). "Although not directly discussing equitable principles or unjust enrichment, it seems that the Court of Appeals of New Mexico viewed *Platco Corp. v. Shaw* as standing for the proposition that the existence of a contract does

not foreclose equitable claims, but again, the contract was not enforceable in *Platco Corp. v. Shaw*." *Id.*

In deciding *Abraham*, Judge Browning thoroughly analyzed New Mexico law on unjust enrichment and concluded that where a plaintiff's unjust enrichment claim is based on the same subject matter that is governed by a contract, the Supreme Court of New Mexico would "require the plaintiff to make some showing as to why the contract claim is not viable." *Id.* at 1285. The factual circumstances of *Abraham* are admittedly different than those here. *See Steadfast*, 2015 WL 12803775, at *4 (discussing *Abraham*, 20 F. Supp. 3d at 1276, 1284–85 ("dismissing an unjust enrichment claim against a third party where the plaintiff did not plead an obstacle to recovery from a privy party under contract law")). "Nonetheless, the reasoning expressed in *Abraham* is consistent with the state's general distaste for equitable claims where a contract claim remains viable." *Id.* "Moreover, this view is consistent with the Tenth Circuit's understanding of New Mexico law." *Id.* (citing *Elliott Indus.*, 407 F.3d at 1117 ("applying New Mexico law to permit an unjust enrichment claim only '[w]here the plaintiff has no alternative right on an enforceable contract'") (quoting 26 RICHARD A. LORD, WILLISTON ON CONTRACTS § 68:5 (4th ed. 2004))).

Plaintiff has pled neither a contract claim nor facts to demonstrate that something has prevented her from pursuing a contract remedy against FedEx for recovery of any of the "improper deductions, charges and/or expenses" to which Plaintiff claims she is owed. Plaintiff argues that "in the event" the Court finds that Armijo and the other class members were employees rather than independent contractors, the Operating Agreement will be unenforceable. (Doc. 30 at 11.) Yet Plaintiff's argument is merely hypothetical. Indeed, Plaintiff fails to mention the Operating Agreement's "Savings Clause," which provides that "[i]f any part of this

Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect." (Doc. 1-1 at 24.) Plaintiff also fails to cite any authority for her theory that the entire Operating Agreement is necessarily void if the Court finds Plaintiff was an employee rather than an independent contractor. It follows, then, that Plaintiff's unjust enrichment claim against FedEx must fail under New Mexico law.[6] *See Steadfast*, 2015 WL 12803775, at *5; *Abraham*, 20 F. Supp. 3d at 1284–85. The Court will grant FedEx's Motion to Dismiss as to Count III.

---

[6] While neither party raises the issue, the Court notes that the Operating Agreement provides it "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (Doc. 1-1 at 25.) Plaintiff has carefully pled her Complaint to avoid a breach of contract claim. The factual underpinnings of Plaintiff's claims, however, particularly those in her unjust enrichment claim, spring from the Operating Agreement.

Using New Mexico's choice of law rules, the Court is confident that New Mexico courts would apply New Mexico law to Plaintiff's unjust enrichment claim. *See Abraham*, 20 F. Supp. 3d at 1264–66. For unjust enrichment claims, New Mexico courts use either "the law of the place of enrichment," *see id.* at 1265 (quoting *Restatement (First) of Conflict of Laws* § 453), or for certain complex cases, "the 'most significant relationship' test[,] which is used to determine which state has the most significant relationship to the transaction and to the parties[,]"*Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1172 (N.M. 2008) (quoting *Restatement (Second) of Conflict of Laws* § 188(1), at 575). Here, New Mexico is both the place of enrichment and has the most significant relationship to the transaction and the parties.

Even if the Court applied Pennsylvania law, the result would be the same: Plaintiff's unjust enrichment claim could not stand. *See, e.g.*, *Abraham*, 20 F. Supp. 3d at 1266 (noting that "courts can 'avoid a choice of law question when the laws of the involved states would produce identical results'") (quoting *Fowler Bros., Inc. v. Bounds*, 188 P.3d 1261, 1265 (N.M. Ct. App. 2008)). Under Pennsylvania law, "[a] cause of action for unjust enrichment may arise only when there is no express contract between the parties." *Khawaja v. RE/MAX Central*, 151 A.3d 626, 633 (Pa. Super. Ct. 2016) (citing *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. Ct. 2004)). In *Khawaja*, the court explained that "[b]ecause a claim for unjust enrichment cannot stand when there is an express contract and because [plaintiff's] allegations in this regard are based on the terms of such a contract," it was proper to dismiss the unjust enrichment claim. *Id.* at 634.

Here, the allegations supporting Plaintiff's unjust enrichment claim arise from the terms of the Operating Agreement: FedEx took certain deductions from Plaintiff's paycheck that she expressly agreed to in the Operating Agreement. Plaintiff makes no showing in her Complaint that the Operating Agreement is unenforceable or void. Thus, the Court finds that Pennsylvania courts would not allow her unjust enrichment claim to stand. *See Villoresi*, 856 A.2d at 851 (finding that "the existence of the written agreement would confine [plaintiff] to a contract remedy and preclude a claim of quasi-contract") (citation omitted). Accordingly, the Court can "avoid a choice of law question" because both New Mexico and Pennsylvania courts would find that Plaintiff's unjust enrichment claim may not stand as her Complaint is currently pled. *See Abraham*, 20 F. Supp. 3d at 1266 (citation omitted).

**V.      Count I: Plaintiff's liquidated damages claim remains.**

In Count I, Plaintiff alleges that FedEx violated N.M. Stat. Ann. § 50-4-22(D), New

Mexico's "overtime law." (Compl. ¶¶ 53–59.) Plaintiff contends that because she and other class

members should have been classified as employees rather than as independent contractors,

FedEx violated Section 50-4-22(D) when it failed to pay them time-and-a-half for any hours they

worked over 40 hours in a week. Section 50-4-22(D), which is part of New Mexico's Minimum

Wage Act, N.M. Stat. Ann. §§ 50-4-19–30 (1978) (MWA), mandates that "[a]n employee shall

not be required to work more than forty hours in any week of seven days, unless the employee is

paid one and one-half times the employee's regular hourly rate of pay for all hours worked in

excess of forty hours." N.M. Stat. Ann. § 50-4-22(D). Section 50-4-22 also sets New Mexico's

minimum wage rate. *See* N.M. Stat. Ann. §§ 50-4-22(A), (C).

Section 50-4-26 provides the penalties for an employer who violates the MWA. Relevant

here is Section 50-4-26(C):

> In addition to penalties provided pursuant to this section, an employer who
> violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the
> employees affected in the amount of their unpaid or underpaid minimum wages
> plus interest, and in an additional amount equal to twice the unpaid or underpaid
> wages.

N.M. Stat. Ann. § 50-4-26(C). Plaintiff reads the last clause of this provision as requiring the

employer to pay liquidated damages for any unpaid overtime.

FedEx disagrees and argues that Section 50-4-26(C) applies only to violations of Section

50-4-22's minimum wage provisions, not to violations of Section 50-4-22's overtime provision.

(*See* Doc. 20-1 at 9–10.) FedEx cites to *Garcia v. Crossmark, Inc.*, 157 F. Supp. 3d 1046

(D.N.M. 2015), in support of its theory. The *Garcia* Court concluded that Section 50-4-26(C)'s

damages clause applies only to violations of the minimum wage provision, not to violations of

the overtime provision. *Garcia*, 157 F. Supp. 3d at 1052–53. The court based its decision on two main tenets of statutory construction. First, the court found "that the phrase 'shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest' defines the later term 'unpaid or underpaid wages,' which, in turn, describes the relationship of this section to § 50-4[-]22." *Id.* at 1053 (citing *United States v. Brune*, 767 F.3d 1009, 1022–23 (10th Cir. 2014) ("courts 'are required to construe a phrase within a statute with reference to its accompanying words in order to avoid the giving of unintended breadth to the statute'") (citation and internal quotation marks omitted)). Second, under "the canon of *expressio unius est exclusio alterius*[,]" the court found "that because the New Mexico legislature included 'minimum wages' in the statute, but not overtime, it intended to exclude overtime from the reach of the law." *Id.* (citing *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1312 (10th Cir. 2012) ("[c]ommon sense, reflected in the canon *expressio unius est exclusio alterius*, suggests that the specification of [one provision] implies the exclusion of others") (internal citation and quotation marks omitted). The court noted that "because minimum wage and overtime 'go hand in hand' as items generally discussed together, the drafting of this statute raises the 'sensible inference that the term left out must have been meant to be excluded.'" *Id.* (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (internal citation and quotation marks omitted)). Finally, the court noted that because FLSA's liquidated damages clause specifically mentions both minimum wage and overtime violations, New Mexico must have intended a different result since it did not "simply import[] the relevant language." *Id.* (discussing 29 U.S.C. § 216(b)).

Plaintiff argues that a later case, *Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150 (D.N.M. 2017), controls. (*See* Doc. 30 at 12–13.) In *Rivera*, the court noted the ambiguity in Section 50-4-

26(C) and held that an overtime claimant is entitled to treble damages. *Rivera*, 240 F. Supp. 3d at 1159–60. The *Rivera* court found that any other result "would be contrary to the MWA's remedial purpose, spirit, and intent." *Id.* at 1159.

### A. Statutory Interpretation of Section 50-4-26(C)

Where "the meaning of a statute is clear and unambiguous, [courts are to] apply the statute as written." *Sinclaire v. Elderhostel, Inc.*, 287 P.3d 978, 981 (N.M. Ct. App. 2012) (citing *Bishop v. Evangelical Good Samaritan Soc'y*, 212 P.3d 361, 364 (N.M. 2009)). Where, however, "the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity[,] or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *Id.* (quoting *Bishop*, 212 P.3d at 364 (internal quotation marks, alteration and citation omitted)).

It is entirely possible to read Section 50-4-26(C) without any ambiguity. The clause at issue, "unpaid or underpaid minimum wages," exactly matches the title of 50-4-22: "Minimum wages." *See Yates v. United States*, 135 S. Ct. 1074, 1090, (2015) (noting that "[t]itles can be useful devices to resolve doubt about the meaning of a statute") (quotation marks and citations omitted); *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 289 P.3d 1232, 1238 (N.M. 2012) (finding that "[f]or the purpose of determining the legislative intent [courts] may look to the title, and ordinarily it may be considered as a part of the act if necessary to its construction").

In its plural form, Section 50-4-22 generally mandates the minimum *wages* employers must pay—either per hour, or per hour after 40 hours in one week. In its singular form, Section 50-4-22 refers to the wage a worker must be paid per hour. *See* § 50-4-22(A), (C). When Section

50-4-26(C) refers to "minimum wages" in its plural form, therefore, particularly where it follows the broad "any provision" introductory language, it is clear that the legislature contemplated an award of liquidated damages to both minimum wage and overtime claimants.[7]

Ignoring the critical singular and plural distinction, the Court agrees that the language of Section 50-4-26(C) "is not 'crystal clear.'" *See Sinclaire*, 287 P.3d at 981. Because "the primary goal when interpreting statutes is to further legislative intent[,]" *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 267 P.3d 70, 72 (N.M. Ct. App. 2011) (quotation omitted), the Court looks "first to the stated purpose of the MWA[,]" *Sinclaire*, 287 P.3d at 281. The MWA provides:

> It is declared to be the policy of this act (1) to establish minimum wage and overtime compensation standards for all workers at levels consistent with their health, efficiency and general well-being, and (2) to safeguard existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hours standards which do not provide adequate standards of living.

N.M. Stat. Ann. § 50-4-19. "This declared policy recognizes that overtime standards protect workers' health and well-being by ensuring that workers are paid a premium for hours worked beyond the number of hours deemed to be a reasonable maximum per week." *Id.* (citing *N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 134 P.3d 780, 782 (N.M. Ct. App. 2006) ("explaining that overtime statutes intend 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost'") (internal quotation omitted)). New Mexico courts interpret the MWA liberally, because it

---

[7] Contrast the plural form in the title of Section 50-4-22 with the singular form in the title of Section 50-4-23: "Persons with a disability; minimum wage; director powers and duties." There, the legislature is referring to only one wage—the minimum wage applicable to persons whose "earning or productive capacity is impaired by physical or mental disability or injury or any other disability . . . ." N.M. Stat. Ann. § 50-4-23(A). Section 50-4-23 does not address overtime, thus the title reflects its singular intention.

is a remedial statute enacted to "protect[] employees from coercive economic pressure." *N.M. Dep't of Labor v. A.C. Elec., Inc.,* 965 P.2d 363, 367 (N.M. Ct. App. 1998); *Echostar Commc'ns Corp.*, 134 P.3d at 782.

Both FedEx and the *Garcia* Court focus on the word "minimum" in the clause regarding "unpaid or underpaid *minimum* wages." FedEx maintains that the legislature's emphasis on "minimum" and omission of "overtime" must mean that the legislature intended to exclude overtime claimants from this damages provision. Such an interpretation, however, not only ignores the plural "minimum wages" distinction discussed above, but it also countermands the introductory language of Section 50-4-22(C), which mandates that "an employer who violates **any provision** of Section 50-4-22 . . . shall be liable" for a damages award. "[T]he [L]egislature is presumed not to have used any surplus words in a statute; each word is to be given meaning." *Baker v. Hedstrom*, 309 P.3d 1047, 1053 (N.M. 2013) (quoting *New Mexico ex rel. Helman v. Gallegos*, 871 P.2d 1352, 1361 (N.M. 1994) (internal citations omitted)). "This Court must interpret a statute so as to avoid rendering the Legislature's language superfluous." *Id.* at 1053–54 (citing *Katz v. N.M. Dep't of Human Servs., Income Support Div.*, 624 P.2d 39, 43 (N.M. 1981); *Diamond v. Diamond*, 283 P.3d 260, 266 (N.M. 2012) ("We must assume the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears.") (internal quotation omitted)). The broad reference to "any provision of Section 50-4-22," which expressly includes New Mexico's overtime law, is a strong indication that the legislature intended the penalties of 50-4-26(C) be given a wide scope.

Interpreting Section 50-4-26 to include liquidated damages for both minimum wage and overtime claimants is also consistent with the FLSA penalties provision, which allows successful claimants "the amount of their unpaid minimum wages, or their unpaid overtime compensation,

as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The *Garcia* Court read the differences between 29 U.S.C. § 216(b) and 50-4-26(C) as evidencing a state legislative intent to limit damages only to minimum wage claimants. *See* 157 F. Supp. 3d at 1053. The *Sinclaire* court, though, observed that "there is nothing in the MWA or our case law that would preclude our interpreting the MWA as being consistent with the FLSA." *Sinclaire*, 298 P.3d at 981. "Indeed, [the New Mexico Court of Appeals] stated in reference to the MWA and the FLSA that '[w]hen two statutes cover the same subject matter, we attempt to harmonize and construe them together in a way that facilitates their operation and the achievement of their goals.'" *Id.* (comparing New Mexico's overtime law (Section 50-4-22(D)) with the FLSA's overtime provision (29 U.S.C. § 207)) (quoting *A.C. Elec., Inc.*, 965 P.2d at 368). Both of these provisions provide for liquidated damages to employees who have not received the required wages. While the wording of the federal statute is clearer, the intent of both statutes is to protect vulnerable workers.[8]

Moreover, provisions of the New Mexico Administrative Code support a finding that all wage claimants—both minimum wage and overtime claimants—are entitled to liquidated damages under Section 50-4-26(C). Section 50-4-27 gives the state labor commissioner "the authority to promulgate and issue rules and regulations necessary to administer and accomplish the purposes of the Minimum Wage Act." N.M. Stat. Ann. § 50-4-27. The Labor Relations Division (LRD) "establish[ed] standards and procedures for the administration of Articles 1, 4 and 6 of Chapter 50[,]" including the MWA. 11.1.4.6 NMAC. A wage claimant may file a wage

---

[8] Additionally, the FLSA's minimum wage provision is found in a different section than its overtime provision, *see* 29 U.S.C. §§ 206, 207, while New Mexico's MWA includes both in the same section, *see* N.M.S.A. § 50-4-22. The New Mexico Legislature was able to refer to the title of one statutory section that covers both types of wage claimants.

claim with the LRD, and the LRD has the authority to investigate the claim and enforce the MWA. *See* 11.1.4.100–109 NMAC.

The LRD defines a "wage claimant" as an "individual employee on behalf of whom a wage claim is filed[,]" 11.1.4.7(P) NMAC, and broadly defines "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount[,]" N.M. Stat. Ann. § 50-4-1 (incorporated by reference in the definition of "wages[,]" 11.1.4.7(O) NMAC). The definition of "wages" is broad enough to cover overtime, and it is certainly not limited to the minimum wage. Indeed, the Statement of Wage Claim form available on the LRD's website includes "overtime" as one of the "Type of Wages Claimed." *See* Statement of Wage Claim, N.M. Dep't of Workforce Solutions LRD, *available at* https://www.dws.state.nm.us/Portals/0/DM/LaborRelations/WAGE_CLAIM_revised_for_ABQ_ 1117.pdf (last visited Dec. 17, 2017).

The regulations provide that during an investigation of a wage claim, the LRD may schedule a settlement meeting. 11.1.4.107 NMAC. "If the claim involves a violation of Section 50-4-22 NMSA1978, the potential amount owed shall include the unpaid and underpaid wages of the wage claimant, plus an additional amount equal to twice the amount of the unpaid or underpaid wages." *Id.* If the parties do not settle and the claimant receives a hearing with the LRD, the regulations again specify that where the wage "claim involves a violation of Section 50-4-22 NMSA 1978, the potential amount owed shall include the unpaid and underpaid wages of the wage claimant, plus an additional amount equal to twice the amount of the unpaid or underpaid wages." 11.1.4.108 NMAC. In both of these sections, the LRD regulations do not distinguish minimum wage claims from overtime claims. Indeed, the regulations omit that pesky

word, "minimum," when defining a wage claimant's damages. The regulations track the language of Section 50-4-26(C) in discussing a written determination of a wage claim. *See* 11.1.4.109 NMAC. There, the regulations provide that where "the claim involves a violation of any provision of Section 50-4-22 NMSA1978, damages shall include the amount of the claimant's unpaid minimum wages plus interest, and an additional amount equal to twice the unpaid or underpaid wages." *Id.* Again, the Court finds that the plural "minimum wages" corresponds with the title of Section 50-4-22, which governs both minimum *and* overtime wages.

Finally, if overtime claimants are denied damages under Section 50-4-26(C), it appears they could not recover monetary damages under any other provision of the MWA. To deny overtime claimants all monetary recovery solely because of the reference to "minimum wages" would "thwart[] the MWA's remedial purpose" and lead to "injustice, absurdity[,] or contradiction" of the broad "any provision" language immediately preceding the clause. *See Sinclaire*, 298 P.3d at 981 (quotation omitted). The Court finds such a result untenable.

In short, the Court finds that the plural "minimum wages" language in Section 50-4-26(C) clearly refers to the title of Section 50-4-22, as Section 50-4-26(C) provides damages for claimants bringing a claim under "any provision" of Section 50-4-22. The Court "must assume the [L]egislature chose" this plural form "advisedly," and to assume otherwise injects unnecessary ambiguity into the statute. *See Diamond*, 283 P.3d at 266 (quotation omitted). Even if the "minimum wages" language of the penalties provision is ambiguous, the Court is compelled to find that both minimum wage and overtime claimants are entitled to liquidated damages due to the MWA's broad remedial purpose, the "any provision" language in Section 50-4-26(C), and the LRD regulations, which do not distinguish between the types of wage claimants. It is clear to this Court that the Legislature intended to include overtime claimants in

the penalties provision. FedEx's motion to dismiss Plaintiff's liquidated damages claim is denied.

## VI.   Conclusion

Plaintiff has not pled facts sufficient to state a claim to relief under Section 14-13-11, thus the Court will dismiss Count II without prejudice. Plaintiff's unjust enrichment claim may not stand as her Complaint is currently pled; therefore, the Court will dismiss Count III without prejudice. Finally, the Court finds that Section 50-4-26(C) allows Plaintiff's claim for damages in Count I. Accordingly, the Court will deny FedEx's motion on that issue.

**THEREFORE,**

**IT IS ORDERED** that FedEx Ground Package System, Inc.'s Motion to Dismiss in Part (Doc. 20) is **GRANTED IN PART**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**