IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAIME LOREE ARMIJO, on behalf of herself and
all others similarly situated,

     Plaintiff,

v.                             Civil No. 17-00440 RB/KK

FEDEX GROUND PACKAGE SYSTEM, INC.,
a foreign company,

     Defendant.

**REDACTED**
**PLAINTIFF'S OPPOSED MOTION FOR CLASS CERTIFICATION**
**AND MEMORANDUM IN SUPPORT**

Plaintiff Jaime Loree Armijo, on behalf of herself and all others similarly situated,

moves this Court under Fed. R. Civ. P. 23(a)(1)-(4) and 23 (b)(3) for an order certifying the

following class:

> *All individuals who drove full-time for defendant FedEx Ground System, Inc.,
> and/or its subsidiary, FedEx Home Delivery, Inc., in New Mexico as package
> pick-up and delivery drivers pursuant to a Standard Operating Agreement and
> who were classified as "independent contractors."*[1]

Armijo brings a single legal claim, under the New Mexico Minimum Wage Act, § 50-

4-22 (2008).[2] With the dismissal of two other claims,[3] this leaves a class period beginning

three years before the litigation commenced and concluding on the effective date of

certification.[4]  Defendant FedEx Ground Package System, Inc., opposes this motion.

---

[1] *See* **Compl., ¶ 44.**
[2] *Id.*, **¶¶ 53–59.**
[3] *Armijo v. FedEx Ground Package Sys.,* 2018 U.S. Dist. LEXIS 1142 (D. N.M. Jan. 3, 2018).
[4] **Compl., ¶ 55.**

# I.  INTRODUCTION

Plaintiff Jaime Loree Armijo's motion for class certification does not break new ground. In cases around the country, courts confronting misclassification claims (a) similar to those brought by Armijo (b) on behalf of drivers (c) against FedEx Ground Package System, Inc. have consistently certified Rule 23 classes.[5]  Just like the classes certified elsewhere, the 66 members of Armijo's proposed class shared the same job title; executed the same Operating Agreement; performed deliveries pursuant to FedEx's detailed and uniform specifications; were paid under the same compensation formula; wore the same uniform, drove trucks bearing FedEx's logo; worked full time; were supervised by FedEx's managers; scanned and tracked every delivery and pick-up with FedEx's scanner equipment; and had their deliveries recorded and monitored through FedEx's software and tracking system.  But in New Mexico, another fact – prominent among FedEx's defenses – also unites the class. In response to drivers' claims brought elsewhere, FedEx required

---

[5] *See Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1329 (11th Cir. 2015) (declining to revisit certification of a class of FedEx drivers who claimed they were misclassified as independent contractors, as there was no need to rely upon individualized evidence); *In re FedEx Ground Package Sys., Inc.,* 662 F. Supp.2d 1069 (N.D. Ind. 2009)(certifying five separate classes of FedEx drivers in various states seeking claims for misclassification and unpaid ages, and certifying in part claims of three other separate classes); *Scovil v. FedEx Ground Package Sys., Inc.,* 886 F. Supp.2d 45, 48 (D. Me. 2012) (certifying class of all full time FedEx drivers to pursue claims for misclassification and unpaid wages); *In re FedEx Ground Package Sys., Inc.*, 273 F.R.D. 424, 469 (N.D. Ind. 2008) (certifying 17 classes of FedEx drivers from different states alleging misclassification and related wage law violations); *In re FedEx Ground Package Sys., Inc.,* 2007 U.S. Dist. LEXIS 76798 (N.D. Ind. Oct. 15, 2007) (certifying class of Kansas FedEx drivers); *Estrada v. FedEx Ground Package System, Inc.,* 154 Cal. App. 4th 1 (Cal. 2nd Dist. Ct. App. 2007)(affirming class certification order for class made up of California drivers alleging misclassification and California statutory violations).

drivers to incorporate as a condition of their employment (or contract retention). Whatever sort of defense FedEx believes is gained by this, it further binds the class.

Armijo, on her own behalf and on behalf of the proposed class, brings a single legal claim, for violation of the New Mexico Minimum Wage Act, NMSA 1978, § 50-4-22(D), which provides that no employee shall be required to work more than 40 hours "in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." The statute is objective – no issues such as reliance or misrepresentation cloud either its elements or its defenses, which make this case *even more amenable* to class treatment.

The Court should certify Armijo's proposed class.

## II.     LEGAL STANDARD

Rule 23 sets forth the requirements for certifying a class action under the federal rules. All classes must satisfy: (i) all the requirements of Rule 23(a); and (ii) one of the three requirements of Rule 23(b). Armijo bears the burden of showing that the requirements are met,[6] "but, in doubtful cases, class certification is favored."[7] The Court need not accept either party's representations, but must independently find the relevant facts by a preponderance of the evidence.[8] "In determining the propriety of a class

---

[6] *See Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978).

[7] *Abraham v. WPX Energy Prod., LLC*, 2017 U.S. Dist. LEXIS 163159, *67 (D. N.M. Sept. 30, 2017)(citing *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968)("[T]he interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action.").

[8] *See Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir. 2000*)*("Going beyond the pleadings is necessary, as a court must understand the claims, defenses,

action, the question is not whether the plaintiff … will prevail on the merits, but rather whether the requirements of Rule 23 are met."[9]

### III.    CHOICE OF LAW

In its decision granting in part FedEx's motion to dismiss, the Court recognized that FedEx's standardized Operating Agreement contains a choice of law clause providing that the contract "shall be governed by and construed in accordance  with the laws of the Commonwealth of Pennsylvania."[10] The Court analyzed Armijo's common law claim – unjust enrichment[11] – under both New Mexico and Pennsylvania law and concluded that the result would be the same – dismissing the unjust enrichment claim under either state's law.[12] The Court, however, did not apply a choice of law analysis to Count 1, the § 50-4-22 claim. That was correct for at least two reasons.

*First*, Armijo's § 50-4-22 claim does not involve (using the words of the Operating Agreement) the "govern[ing] … and construct[ion]"[13] of the Operating Agreement. Rather, the governing economic realities tests "seeks to determine an employee's *actual* economic *reality* vis-a-vis his or her employer and is not based upon an employee's

---

relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

[9] *Anderson v. Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982). *See Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009)("We, of course, adhere to the principle that class certification does not depend on the merits of a suit.").

[10] *Armijo*, 2018 U.S. Dist. LEXIS 1142, *19 n.6.

[11] **Complaint, ¶¶ 68–74.**

[12]  *Armijo*, 2018 U.S. Dist. LEXIS 1142, *19 n.6 ("Accordingly, the Court can 'avoid a choice of law question' because both New Mexico and Pennsylvania's courts would find that Plaintiff's unjust enrichment claim may not stand as her Complaint is currently pled.")(citation omitted).

[13] **Lewis Decl., Ex. A** (Operating Agreement) at ¶ 19.

theoretical rights or obligations under a contract."[14]  Second, the rights conferred by the

Minimum Wage Act "are non-negotiable, meaning that they cannot be waived by private

law, including the worker's and the employer's mutual agreement. The statute itself

conveys the right, imposes the obligation, and provides the remedy for its violation."[15]

## IV.  BACKGROUND

**A.  The relevant facts support class certification**

*1.  FedEx's Operating Agreement*

The class definition conditions membership during the class period on a contractual

relationship between the class member and FedEx.[16] That contract is FedEx's Operating

Agreement,[17] which other courts have described as a "brilliantly drafted contract creating

the constraints of an employment relationship with [the drivers] in the guise of an

independent contractor model—because FedEx not only has the <u>right to control</u>, but has

close to <u>absolute actual control</u> over  [the drivers] based upon interpretation and

obfuscation."[18]

Class members all signed the same Operating Agreement[19] (not accounting for

immaterial addenda added to the agreement during the class period). Thus, to whatever

---

[14] *Casias v. Distrib. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 197250, *63 (D. N.M. March 31, 2014.
[15] *Self v. UPS*, 1998-NMSC-046, *15, 126 N.M. 396, 402, 970 P.2d 582, 589 (1998)(citations omitted).
[16] *See* **Complaint, ¶ 44.**
[17] **Ex. A** (Operating Agreement).
[18] *Craig v. FedEx Ground Package Sys.,* 300 Kan. 788, 805 (Kan. 2014)(internal quote marks and citations omitted) (emphasis added).
[19] **Ex. A** (Operating Agreement).

extent the Operating Agreement is relevant to the correct determination of employee status – and it is only marginally relevant[20] - its terms are identical.

Thus, in every Operating Agreement, FedEx promised "that [the] Contractor shall be responsible for exercising independent discretion and judgment to achieve the business objective … and no officer, agent or employee of FedEx Ground shall have the authority to direct Contractor as to the manner or means employed to achieve such results."[21]

FedEx routinely breached that express promise.[22] But beyond failing to live up to the promise, the Operating Agreement is constructed such that FedEx – and not the contractor – micromanages the "manner or means" by which drivers perform their jobs. Accordingly, for all class members, FedEx:

- chose the type of vehicle class members could drive;[23]
- established a maintenance schedule for the drivers;[24]

[20] *See Casias,* 2014 U.S. Dist. LEXIS 197250, *63 (the economic realities test "seeks to determine an employee's *actual* economic *reality* vis-a-vis his or her employer and is not based upon an employee's theoretical rights or obligations under a contract")(citations omitted)(emphasis in original).

[21] **Ex. A** (Operating Agreement) at ¶ 1.15.

[22] **Ex. B** (Armijo Dep.), at 217:14-218:8:

**"Q:** 'For example, no officer, agent, or employee of FedEx Ground shall have authority to prescribe hours of work, whether or when the contractor is to take breaks, what route the contractor is to follow, or other details of performance.' Did it ever happen that FedEx Ground personnel violated that provision?

**A:** Yes.

**Q:** When?

**A:** Almost daily. I mean, it says that they're not allowed to prescribe hours or when the contractor is to take breaks or what route the contractor is to follow, or details of the performance, but in actuality, going back to what I stated before, how they control when we leave the terminal, when we are able to receive our manifest to scan out, and to start our work."

[23] **Ex. A** (Operating Agreement) at Addendum 1 (bates Armijo_31-32 & 110-111).

[24] ***Id.***, ¶ **1.2.**

- granted FedEx the right to charge class members the cost incurred in paying the drivers' licenses, taxes and fees;[25]
- maintained "exclusive possession, use and control" of class members' delivery trucks. These trucks could be used "for no other purpose" than FedEx delivery when they were in service; when the trucks were out of service, class members were required to hold FedEx harmless from any liability arising of their use;[26]
- required that all class members' vehicles bear FedEx's color and other identifying insignia; when the truck was used out-of-service, the identifying insignia was required to be covered;[27]
- required that the vehicles be registered in the name of FedEx;[28]
- required that class members file the originals of all their driver logs, along with receipts, with FedEx;[29]
- required drivers to fund an "escrow account;"[30]
- established an appearance standard for drivers and vehicles;[31]
- mandated the type and amount of communications equipment class members must purchase and maintain at their expense;[32]
- had veto power over any drivers who class members wished to hire to help service their routes;[33]
- maintained the same compensation formula for all class members, which, generally, combined payment for pickup and delivery, van availability, the "core density" of the class members' route;[34]
- charged class members for a "Business Support" package. [35] Though the Operating Agreement says that class members "elect[]" to participate, the package provided items – such as FedEx's scanner and FedEx's uniform – unavailable elsewhere;[36]

---

[25] *Id.,* ¶ 1.3.
[26] *Id.,* ¶ 1.4.
[27] *Id.,* ¶ 1.5.
[28] *Id.,* ¶ 1.6.
[29] *Id.,* ¶ 1.8.
[30] *Id.,* ¶ 1.9.
[31] *Id.,* ¶ 1.12.
[32] *Id.,* ¶ 1.13.
[33] *Id.,* ¶ 2.2.
[34] *Id.,* ¶ 4.1.
[35] *Id.,* ¶ 7.
[36] **Ex. B** (Armijo Dep.) at 239:12 – 23:
"**A:** There's no – you can't shop around for competitive rates. Even like with the scanner, like I said, having to elect into that makes you subject to renting their scanner, which I can't go buy a scanner wherever I want, at Home Depot, with the same software, whatever, so I'm subject to that scanner all the time."

- maintained that the Operating Agreement was automatically renewed at the end of the term of the contract;[37]
- required that class members purchase liability insurance naming FedEx as an additional insured;[38]
- requires that all class members register as a corporate entity as a condition of contracting;[39] and
- has the right to change class members' routes without notice.[40]

There's more. All class members must qualify to be considered by FedEx to enter into the Operating Agreement. That qualification includes required driving training and the purchase by class members of a route and truck.[41] Class members don't see the Operating Agreement until they are ready to sign it.[42] That combination, the purchase of a route and truck <u>before</u> class members see the Operating Agreement, makes it economically unfeasible for class members to walk away from the Operating Agreement.[43]

---

[37] **Ex. A** (Operating Agreement) at ¶11.2.

[38] *Id.* at Addendum 2 (bates Armijo_33-36 & 112-115).

[39] *Id.* at Addendum 16 (bates Armijo_100-106 & 155-160).

[40] *Id.* at ¶ 5.2.

[41] **Ex. C** (bates FXG-ARMIJO 870-71); *See generally* **Ex. B** (Armijo Dep.) at 123-24.

[42] **Ex. B** (Armijo Dep.) at 88:6–89:2:

"**Q:** Before you signed the contract with FedEx Ground, were there any issues you wanted to investigate or questions you wanted answered?

**A:** I kind of had questions, but I didn't really know where to start. Nobody had any information, in fact, when you become a contractor, you have to have a business plan, you have to get incorporated, you have to go through all kinds of steps before you actually become a contractor…. You don't get the contract until the day that you become incorporated. And then when you 300 pieces of paper, you go out and drive. So you can't sit there and read and drive at the same time so."

[43] **Ex. B** (Armijo Dep.) at 169:15–19:

"**A:** Okay. So because, No. 1, like I said, nobody wants to challenge that because we're all in, so, you know, you have $65,000 on the table. You're not going to go challenge anybody because you're in jeopardy of losing that."

## 2. *The incorporated status of all class members*

FedEx believes that the fact that it required that all drivers to incorporate to be its silver bullet.[44] That fact is not dispositive[45] but, because it is common among all class members, it weighs in *favor of* class treatment.

## 3. *FedEx policies and procedures*

The Operating Agreement didn't cover all aspects of FedEx's relationship with its drivers; FedEx's policies exercised restraint over the drivers' "manner and means":

> For instance, you have to submit a maintenance report at the end of every month before they even allow you to take your own vehicle out of that place. So, let's say, I didn't get it on time. Guess what, I have to wait there until a mechanic can sign off and say I did an oil change or whatever. So in that sense, they're micromanaging. I couldn't do a lot of things that I needed to do as a business contractor without a lot of – a lot of like answering to people. For instance, if a truck comes in late from Arizona because it's snowing and I need to drive an hour and a half to get through the snow, I still have to wait for that truck to come in and get unloaded before I can take my vehicle with my packages, supposedly, but they're not, because I can't even do anything with them, without first getting FedEx's approval.[46]

Armijo has submitted deposition testimony from three FedEx managers who collectively worked at three New Mexico terminals and various other locations across the country. The managers' experience indicates that they were seamlessly transferred from station to station, a likely result of their attendance at district-wide and national trainings

---

[44] **Ex. A** (Operating Agreement) at Addendum 16 (bates Armijo_100-106 & 155-160).
[45] *See* **Ex. D**, "Myths about Misclassification," Wage and Hour Division, U.S. Department of Labor ("Having your own EIN or paperwork stating that you are performing services as an LLC, sole proprietorship, or other type of business does not by itself make you an independent contractor. This is particularly true if your employer requires you to file business paperwork and obtain a business name to get the job or to receive payment for your services. You are an employee if your work falls within a law's definition of employment, regardless of how your relationship is characterized on paper.").
[46] **Ex. B** (Armijo Dep.), at 165:25–166:22.

put on by FedEx.[47]  Their deposition testimony confirms that FedEx implemented

standardized practices at all locations.

For example, FedEx supplemented the Operating Agreement with a 122-page

"Operating Agreement Reference Guide" used to explain the contract to prospective

drivers.[48] Another policy document is a 119-page "Scanner Workbook" that contains

detailed instructions for how drivers are to scan and record all packages and deliveries.[49]

FedEx generally maintained policy documents on a centralized intranet accessible to FedEx

managers and employees.[50]  The system is "all-encompassing,"[51] and

███████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████.[52]

The details of every FedEx package delivery are recorded through the FedEx driver's

Star scanner, which every driver uses to record her daily activities.[53] ██████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████"[54] ██████████████████████████

---

[47] **Ex. E** (Roeing Dep.) at 8:18-9:5, 33:23-34:5; **Ex. F**  (Braden Dep.) at 6:10-7:8; **Ex. G** (Perez Dep). at 12:3-14:15.

[48] **Ex. E** (Roeing Dep.) p. 78:15-79:15; **Ex.  G** (Perez Dep.) at 84:23-85:25; **Ex. H** (██████ ██████████ excerpt).

[49] **Ex. G** (Perez Dep.) at 81:21-82:16.

[50] **Id.,** at 15:7-16:10.

[51] **Ex. E** (Roeing Dep.) at 12:16.

[52] **_Id.,_** at 12:16-22.

[53] **Id.,** at 46:10-13; 6:9-14.

[54] **Id.** at 44:18-45:9.



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ [55] ██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ [56]

   █████████████████████████████████████████████████████

██████████████████████████████████████████,[57] ████████

██████████████ [58] ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ [59] ████████

████████████████████████

- █████████████████████████████████████████████
  ████████████████████████████;

- ██████████████████████████████████████████████████;

- ██████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████; and

- "████████████████████████████████████████████
  ████████████████████████████████████████████████

---

[55] *Id.* at 58:16-59:15.
[56] *Id.* at 60:19-22.
[57] *Id.* at 19:21-22; **Ex. G** (Perez Dep.) at 21:11-17.
[58] **Ex. I** (███████████████ Sampling).
[59] **Ex. E** (Roeing Dep.) at 19:23-21:19; *see also* **Ex. I** (███████████████).

██████████████████.[60]

FedEx also maintains a centralized customer service system, whereby any customer can call 1-800-GOFEDEX.[61] ████████████████████████

██████████████████████████████ ██████████████████

██████████████████████████[63]  (A sampling of complaints is attached at **Ex. N**). ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████"[64] ████████████████████

████████████████████████████████████████

████████████████████████████"[65]  A ████████

██████████████████████████[66]



In sum, though the Operating Agreement purported to grant the drivers the right to "determine the methods, manner and means of performing [their] obligations,"[67] FedEx's additional requirements and policies enabled FedEx to control nearly every aspect of the drivers' work.

---

[60] **Ex. E** (Roeing Dep.) at 35:6-23, 40:12-42:6, 61:21-62:13, 72:2-11, 75:5-11; *see also* **Ex. J** (████████████████████████); **Ex. K** (████████████████); **Ex. L** (████ ████████████); **Ex. M** (████████ ████████).
[61] **Ex. F** (Braden Dep.) at 23:14-24:2.
[62] **Ex. E** (Roeing Dep.) at 29:2-30:18.
[63] **Ex. F** (Braden Dep.) at 26:7-18.
[64] **Ex. E** (Roeing Dep.) at 30:14-18.
[65] *Id.* at 68:5-69:5.
[66] *Id.* at 69:9-11.
[67] **Ex. A** (Operating Agreement) at ¶ 1.4.

#### 4.    *Damages can be calculated classwide*

As to calculating damages in a class action, this Court has held:

A class can have individual damage calculations, but the Court has to look at the issues of individual damages calculations at the class certification stage. Second, the methodology for all class members needs to be common or, if there are different methodologies for some plaintiffs and class members, the Court must take these differences into account at the class certification stage in the predominance analysis. … Third, even if the methodology is common to the class, the Court must decide whether it will operate in a consistent way for each individual class member.[68]

FedEx has eliminated all class issues as it relates to damage calculation. FedEx retained Suzanne M. Stuckwisch to organize and sort its scanner data for FedEx's expert report.[69] ███████████████████████████████████████████████████████████ █████████████████████████████████████.[70] Thus, FedEx's internal data can be sorted to identify class membership; who in the class worked more than 40 hours in a week during the class period; and by how much. (███████████████████████████ ██████████████.[71])

---

[68] *Abraham v. WPX Energy Prod., LLC*, 2017 U.S. Dist. LEXIS 163159, *89 – 90 (D. N.M. Sept. 30, 2017).
[69] **Ex. O** (Stuckwisch report).
[70] *Id.* at Exhibit 1.
[71] **Ex. P** (Stuckwisch dep.) at 61:22–62:12:
"█████████████████████████████████████████████████
██████████████████████████
████████████████████████████████████████████
███████████████████████
████████████████████████████████████
██████████████
██████████████████████████████
██████████████████████████████████████
████████████████████████
██████████████████████████████████
███████████████████

The only remaining issue is the formula to calculate the overtime rate. Once that is decided, the overtime rate will be multiplied against the hours over 40 worked to determine overtime damages.

**B.     The relevant law supports class certification**

There are two principal legal issues involved in this case. The first is whether New Mexico FedEx drivers are properly classified as employees. The second is whether, if they are employees, they are entitled to overtime. Both issues are amenable to class treatment.

### 1.     *New Mexico's Minimum Wage Act employee test*

The New Mexico Minimum Wage Act provides in relevant part that "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the <u>employee</u>'s regular hourly rate of pay for all hours worked in excess of forty hours."[72] The Wage Act  does not define "employee"; instead, it lists workers who are not "employee[s]."[73]  New Mexico courts, noting the parallels between the federal Fair Labor Standards Act [74] and the Wage Act,[75] have concluded that the FLSA's "economic realities" test, and not New Mexico's common law analysis,[76] is used to determine whether a person is an employee under the Wage Act.[77]

---

[72] NMSA § 50-4-22(D)(emphasis added).

[73] NMSA § 50-4-21(C).

[74] 29 U.S.C. § 201, *et seq.*

[75] *Segura v. J.W. Drilling, Inc.,* 2015-NMCA-085, ¶ 9, 355 P.3d 845, 848 ("Although several New Mexico cases refer to federal law as persuasive authority in interpreting the MWA, in those cases the MWA and the FLSA had similar provisions…. However, when the language of the MWA and the FLSA differ, we treat federal case law differently.").

[76] *Celaya v. Hall*, 2004-NMSC-005, ¶ 11, 85 P.3d 239, 242, 135 N.M. 115, 118 ("New Mexico courts have employed an agency analysis to determine whether an individual is acting as an independent contractor or as an employee. In *Harger v. Structural Services, Inc.,* 121 N.M.

(Claims under the Wage Act are certifiable under Fed. R. Civ. P. 23, and not through the FLSA's opt-in process.[78])

"In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business."[79] This issue "is a question of fact [requiring] consideration of the 'total employment situation.' "[80] The economic realities test easily can be applied class-wide. In *Rutherford Food Corp. v. McComb*,[81] for example, the U.S. Supreme Court concluded that the determination of the economic realities depends "upon the circumstances of the whole activity,"[82] and agreed with the Tenth Circuit Court of Appeals that a FLSA-certified group of workers were

---

657, 664, 916 P.2d 1324, 1331 (1996), we adopted the Restatement (Second) of Agency § 220 (1958) to identify an independent contractor for purposes of workers' compensation. Under an agency analysis, the principal's right to control the individual performing the work often distinguishes an employee from an independent contractor.")(citations omitted).

[77] *E.g., Garcia v. Am. Furniture Co*., 1984-NMCA-090, ¶ 17, 101 N.M. 785, 689 P.2d 934, 938 ("[i]n determining whether a person is an employee under the Minimum Wage Act the ultimate issue is whether as a matter of economic reality the particular worker is an employee.")(internal quotes and citation omitted).

[78] *Casias,* 2014 U.S. Dist. LEXIS 197250, *24 ("The Supreme Court's holding in *Shady Grove* is controlling here and requires this Court to hold that Federal Rule of Civil Procedure 23— and not the collective action provision contained in Section 50-4-26(B)(2) of the New Mexico Wage Act—sets forth the standard for determining whether Plaintiffs' action may proceed as a class action.").

[79] *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

[80] *Garcia*, 1984-NMCA-090, ¶ 17, 101 N.M. 785, 789 (quoting *Wirtz v. Lone Star Steel. Co*., 405 F.2d 668, 669 (5th Cir. 1968)).

[81] 331 U.S. 722 (1947).

[82] *Id.* at 727.

employees, by looking at the group of workers as a whole.[83]  So too, the existence of factors

in the economic realities test doesn't fracture certification. The 7th Circuit explained:

> The independent-contractor exemption requires that the individual be free from control "in fact," which is evaluated by looking at twenty-five factors.  The existence of factors to evaluate, however, does not defeat the ability of Plaintiffs to satisfy those factors by offering common evidence.[84]

Though the majority of published decisions analyzing the economic realities of a

group of employees do so in the context of the FLSA, there is no impediment to certifying a

Rule 23 economic realities class. In *Rehberg v. Flowers Baking Co.*,[85]  a federal district court

certified a class of bakery drivers who – like the class here – claimed they were

misclassified as independent contractors.  Before certifying, the court first concluded that

the distributors' state wage and hour act claim was subject to the economic realities test.[86]

With that established, the court certified the class under Fed. R. Civ. P. 23, with an analysis

that applies, word-for-word, here:

> Common evidence as to each factor of the economic realities test exists in this instance. Specifically, the court finds that Defendants exercise uniform control over distributors by requiring that they perform their jobs in accordance with "good industry practice," a standard that Defendants define in detail in the Distributor Agreement []. All distributors' opportunities for profit or loss are limited by Defendants' significant control over profit-generating activities for national accounts, including Defendants' role in managing existing accounts and seeking new ones, and in determining product pricing and promotions. [] All distributors are expected to make the same level of investment in equipment—all must purchase their own vehicle but are provided the handhelds, proprietary software, dollies, and other tools necessary by Defendants.[] In terms of skill required for the job, distributors

---

[83] *Id.* at 730.

[84] *Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1060-61 (7th Cir. 2016)(reversing district court's denial of class certification in driver misclassification case).

[85] 2015 U.S. Dist. LEXIS 36929 (W.D.N.C. March 24, 2015).

[86] *Id.,* at *15 ("Defendants respond that though it is proper for courts to apply the right to control test in personal injury, workers' compensation, and certain tort cases, it is inapplicable to claims under the NCWHA. The court agrees.").

are subject to common standards—they are not required to have any advanced knowledge, skill, educational background, or job experience, though they all undergo the same prospective distributor training. [] Regarding the permanence of distributors' working relationships with Defendants, although there is no set time frame for a distributorship, distributor relationships are clearly intended to be at least somewhat long-term, as evidenced by the fact that distributors sign binding agreements, agree to be trained by Defendants, and make significant monetary investments in their distributorships. Finally, common evidence shows that the degree to which the distributors' services are considered an integral part of the employer's business is uniform across the board—Defendants rely almost exclusively on distributors to deliver their products to retailers and restaurants. [] This common evidence is sufficient to allow the court to undergo the economic realities test as to Plaintiff and all putative class members.[87]

This Court's decision in *Casias v. Distrib. Mgmt. Corp.*[88] does not conflict with *Rehberg.* In *Casias*, drivers classified as independent contractors brought claims under the Wage Act contending that they were in fact employees and thus entitled to the statute's protections. This Court denied the motion, but not because of legal infirmities. The Court found that the evidence supporting the motion, which consisted of three driver declarations, no evidence from the defendant and a reference to an unproduced memo,[89] was not enough.[90]  This only *contrasts* with Armijo's motion, which relies on FedEx-authored standardized forms, and the deposition testimony from three FedEx managers confirming that these policies were used to manage the activities of all class members.

## 2.    *New Mexico's Minimum Wage claim elements*

Armijo's and the class's single legal count is brought under NMSA 1978, § 50-4-22(D), which provides:

---

[87] *Id.* at *19 – 21.
[88] 2014 U.S. Dist. LEXIS 197250 (D. N.M. March 31, 2014).
[89] *Id.*, *49-50.
[90] *Id.*, *53 ("None of the testimony indicates that DMC had any company-wide policy or practice of controlling the ways, means, or manner in which the alleged independent contractors provided their services.").

> An employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours. For an employee who is paid a fixed salary for fluctuating hours and who is employed by an employer a majority of whose business in New Mexico consists of providing investigative services to the federal government, the hourly rate may be calculated in accordance with the provisions of the federal Fair Labor Standards Act of 1938 [29 USCS § 201 et seq.] and the regulations pursuant to that act; provided that in no case shall the hourly rate be less than the federal minimum wage.

The statute may be enforced civilly via § 50-4-26 and provides for damages equal to the amount of unpaid overtime, plus a liquidated damages multiplier of two.[91] The statute of limitations is three years.[92] The rights conveyed by the statute

> are nonnegotiable, meaning that they cannot be waived by private law, including the worker's and the employer's mutual agreement. The statute itself conveys the right, imposes the obligation, and provides the remedy for its violation..[93]

Claims brought under the Wage Act are certifiable.[94]

## V.    STANDING

Though it is unmentioned in the body of Fed. R. Civ. P. 23, "[s]tanding … is a jurisdictional element that must be satisfied prior to class certification."[95] It is impossible to see how standing is not met. The class definition limits membership to persons who contracted with FedEx who drove full-time during the class period and who were classified

---

[91] *Armijo,* 2018 U.S. Dist. LEXIS 1142, *29-30 ("To deny overtime claimants all monetary recovery solely because of the reference to 'minimum wages' would 'thwart[] the MWA's remedial purpose' and lead to 'injustice, absurdity[,] or contradiction' of the broad 'any provision' language immediately preceding the clause. The Court finds such a result untenable.")(citations omitted).

[92] NMSA § 37-1-5.

[93] *Self*, 1998-NMSC-046, ¶ 14; 970 P.2d 582, 588.

[94] *See, e.g., Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120; 168 P.3d 129 (N.M. 2007)(affirming trial court certification of a Rule 23 claim brought under the Minimum Wage Act while amending the class definition).

[95] *La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985).

as independent contractors while working under the same Operating Agreement, all during the three-year class period.

## VI. ARMIJO MEETS ALL OF RULE 23'S REQUIREMENTS

To attain certification, Armijo must show that all four elements of Fed. R. Civ. P. 23(a)(1)-(4) are met, and that one of three elements of Fed. R. Civ. P. 23(b)(1)-(3) are likewise satisfied. Here, Armijo has met all elements of Rule 23(a) along with Rule 23(b)(3).

## A. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action, because the alternative of joinder is impracticable. "[T]here is 'no set formula' to determine whether the numerosity requirement is met; instead, it is a fact-specific inquiry best left to the district court's discretion."[96] "[T]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable."[97]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████[98] because the class is limited to drivers "who drove full-time" during the class period.[99]

---

[96] *Gonzales v. City of Albuquerque*, 2010 U.S. Dist. LEXIS 98271, *22 (D. N.M. Aug. 21, 2010)(quoting *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978)).

[97] *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 662 (D. N.M. 2016)(quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993)).

[98] **Ex. P** (Stuckwisch dep.) at 71:13-72:12.

████████████████████████████████████████████

██████████████████

██████████████████████████████

**B.     Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Even "factual differences in the claims of the individual putative class members should not result in a denial of class certification where common questions of law exist."[100]  A single common question will satisfy rule 23(a)(2), but the question must be one "that is central to the validity of each one of the claims."[101]

The central question in this litigation is whether Armijo and the class were properly classified as independent contractors. Again, *Rehberg* applies:

> Though Defendant does indeed cite differences between the employment relationships of various distributors, the differences are not so great as to not destroy commonality. While each distributor may have carried out the essential functions of his job slightly differently, such differences will always exist between people due to variations in personal style and circumstance. Here, all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations of the NCWHA based on this classification. As such, the court believes that it will be able to determine whether Defendants' uniform policy of classifying Plaintiff and all putative class members as independent contractors, as opposed to employees, denied them any rights under North Carolina law. Accordingly, the court finds that for Plaintiff's misclassification claim, there is a question common to all putative class members that can resolved "in a

---

[99] *See* **Compl., ¶ 44.**

[100] *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 148 (D. Colo. 1996).  *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988)("That the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy."); *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D. N.M. 2002) ("Commonality requires only a single issue common to the class, and the fact that the claims of individual putative class members may differ factually should not preclude certification under rule 23(b)(2) of a claim seeking the application of a common policy.")(citations omitted and internal quote marks omitted).

[101] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

single stroke" and that sufficient common evidence exists to satisfy the commonality element of Rule 23.[102]

All six elements that New Mexico courts generally consider[103] in determining employment status have already been discussed above. All involve common evidence as to:

(1) the degree of control exerted by the alleged employer over the worker, the common evidence is the Operating Agreement and FedEx's uniform state-wide policies;

(2) the worker's opportunity for profit or loss, the common evidence is the uniform compensation structure;

(3) the worker's investment in the business, FedEx requires the same for all class members – the acquisition of a FedEx approved truck and route, and training on the truck;

(4) the permanence of the working relationship, all Operating Agreements are renewable by FedEx;

(5) the degree of skill required to perform the work is the same – drivers must be Class C licensed; and

(6) FedEx's own documents discuss the extent to which the work is an integral part of the alleged employer's business.[104]

## C.   Typicality

Rule 23(a)(3) requires that the named representative's claims be typical of the class' claims. In *Rehberg*, typicality was met where

Plaintiff's prima facie case asserts that Defendants violated the NCWHA through the same standardized policy of classifying them as independent contractors, failing to pay

---

[102] *Rehberg*, 2015 U.S. Dist. LEXIS 36929, *22-23.
[103] *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).
[104] *See, e.g.,* **Ex. Q** (FedEx Manual at FXG-ARMIJO 3623) ███████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████████

wages and overtime pay, and making unauthorized compensation deductions. The facts proving Plaintiff's claim derive from the Defendants' uniform application of the "misclassification" and "wage deduction" policies to all distributors. All proposed class members were subject to these policies, and all signed agreements classifying them as independent contractors. Accordingly, the underlying facts of Plaintiff's claims are the same as those of the proposed class members.[105]

Armijo is not subject to unique defenses, and whatever differences exist between her and class members are immaterial to her claims.

**D.     Adequacy**

Fed. R. Civ. P. 23(a)(4) requires that Armijo demonstrate that she and her counsel "will fairly and adequately protect the interests of the class." To satisfy this element, Armijo must show that she and her counsel (1) have no conflicts of interest with other class members; and (2) will vigorously prosecute the action on behalf of the class.[106]

As to conflicts , there are none. Armijo has the same stake in this case as all other class members. There is no conflict, real or theoretical. Similarly, there is no conceivable showing that her lawyers are somehow conflicted. As to the second element, there is no doubt but that Armijo has vigorously pushed this action and will continue to do so. Armijo has done everything required: she commenced this case, answered interrogatories, produced hundreds of pages of documents, and sat for a 7 hour and 5-minute deposition. During her deposition, Armijo demonstrated that she understands the case theory and what's at stake.[107] As for her lawyers, their work demonstrates their competence, but to

---

[105] *Rehberg*, 2015 U.S. Dist. LEXIS 36929, *26-27.
[106] *See  Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).
[107] **Ex. B** (Armijo dep.) at 50:10-51:17:
"**Q:** Do you understand that you have sued FedEx Ground as a representative plaintiff on behalf of a class?

the extent a more developed record is necessary, they have either submitted supporting

declarations, or can direct the Court's attention to various instances in which they have

been held to be "adequate" in similar litigation, including litigation brought by drivers

against this same defendant.[108] Albuquerque counsel is serving as local counsel to assist

plaintiff's counsel, and did not submit a declaration.

## E.    Rule 23(b)(3)

Here, Armijo seeks certification under Fed. R. Civ. P. 23(b)(3), which requires that

(1) questions of law or fact common to class members predominate over any questions

affecting only individual members; and (2) proceeding as a class is superior to other

available methods of fair and efficient adjudication of the controversy.  "The predominance

---

**A:** I do.
**Q:** What is your understanding of what this litigation is about?
**A:** So basically, I – I know that I'm the face of FedEx. I'm speaking for a number of people.
**Q:** You mean the face of the class?
**A:** Of the class, yes.
….
**A:** And we'd like to just get what we deserve, which is our overtime that we never received.
….
**Q:** Other than getting money for overtime, is there any other reason that you're doing this?
….
**A:** Well, I mean, you know, how they say, if you – there's a saying. Let me think of it. Give me a second. Bad things happen when good men sit down."
[108] *See Scovil*, 886 F. Supp. 2d at 48 (noting that attorneys at Lichten & Liss-Riordan, P.C. have "extensive experience in class action litigation, employment litigation, and litigation against FXG," and appointing them class counsel); *Sanders v. The CJS Solutions Group, LLC*, 2018 WL 620492, at *5 n.6 (S.D.N.Y. Jan. 29, 2018) (finding that Berger & Montague, P.C. and Lichten & Liss-Riordan, P.C. "are skilled and experienced employment class action firms with extensive experience prosecuting and settling wage and hour class and collective actions"); *Acevedo v. BrightView Landscapes, LLC*, 2017 WL 1062377, at *8 (M.D. Pa. Mar. 21, 2017) ("The court is confident, however, that the plaintiffs interests were adequately represented … given the expertise of Attorney Carson and Berger & Montague, P.C. in this type of litigation.").

requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)."[109] A question is common when the same evidence for each member makes a *prima facie* showing.[110]

The starting place here is FedEx's decision to classify all drivers as independent contractors. "T]he propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues."[111] Beyond that, the record here contains FedEx's "brilliantly drafted contract [that] creat[es] the constraints of an employment relationship [] in the guise of an independent contractor model"[112] along with FedEx's uniform and statewide micro-management policies satisfy predominance:

> Here, common evidence exists as to the propriety of Defendants' uniform classification of all distributors as independent contractors, which will allow the court to determine whether Defendants are liable for any violations
> of the NCWHA related to overtime pay or unauthorized deductions. The court finds that the first prong of Rule 23(b)(3) is satisfied, as legal and factual issues common to the putative class predominate over any issues affecting only individual members.[113]

As to superiority, Rule 23(b)(3) provides the following are relevant: (i) class members' interest in individually controlling the prosecution of separate actions; (ii) the

---

[109] *Thorn v. Jefferson Pilot Life Ins.*, 445 F.3d 311, 319 (4th Cir. 2006).
[110] *Abraham,* 2017 U.S. Dist. LEXIS 163159, *84.
[111] *Hart v. Rick's Cabaret Int'l Inc.*, 2010 U.S. Dist. LEXIS 137129, 21 (S.D.N.Y. Dec. 17, 2010) (certifying class of exotic dancers)(citing *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 86, 89 (S.D.N.Y. 2001)(finding predominance where central issues were whether plaintiffs were properly categorized as independent contractors and the consequences of the resolution of that issue in relation to minimum wage)).
[112] *Craig* 300 Kan. 788, 805 (internal quote marks and citations omitted).
[113] *Rehberg*, , 2015 U.S. Dist. LEXIS 36929, *35. *See In re FedEx Ground Package Sys., Inc.,* 2007 U.S. Dist. LEXIS, , *54 ("[t]he evidence [] ... won't require the sort of individual analysis that would make class certification inappropriate.").

extent and nature of any litigation concerning the controversy already commenced by

members of the class; (iii) the desirability of concentrating the litigation of the claims in the

particular forum; and (iv) the difficulties likely to be encountered in the management of a

class action. Again, *Rehberg* applies:

> Plaintiff argues that class treatment is a superior method for adjudicating each putative class member's claims for several reasons. First, it will allow class members to seek relief from Defendants' allegedly wrongful conduct that they would otherwise be unable to pursue because of financial limitations or fear of retaliation. Second, the relatively small amount of damages sought in this case provides little incentive for class members to pursue individual claims. Finally, allowing the action to proceed as a class action will resolve all issues in a single case and promote judicial economy. On all accounts, the court agrees and finds that a class action is indeed the superior method for proceeding in this matter.[114]

## VII.    ASCERTAINABILITY

Though not found within Fed. R. Civ. P. 23, Armijo must show that class members

are ascertainable. At this stage, the ascertainability requirement mandates only that "[t]he

method of determining whether someone is in the class must be administratively

feasible"[115] On this issue, FedEx's expert report resolves the issue, as the author was able to

identify all 66 class members by sorting FedEx data.[116]

## VIII.    CONCLUSION

Armijo has satisfied all the Rule 23 requires. The Court should certify the proposed

class.

---

[114] *Rehberg*, 2015 U.S. Dist. LEXIS 36929, *35-36.
[115] *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-97 (D. Colo. 2014) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)).
[116] *See* **Ex. O** (Stuckwisch report).

Respectfully submitted,
BAUMAN, DOW & STAMBAUGH, P.C.
*/s/ Cynthia L. Weisman*
Christopher P. Bauman
Cynthia L. Weisman
P.O. Box 30684
Albuquerque, NM 87190
Tel. (505) 883-3191
Fax (505) 883-3194
cpb@bdsfirm.com
cw@bdsfirm.com
 and
LICHTEN & LISS-RIORDAN, P.C.
Harold L. Lichten
Matthew Thomson
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. 617-994-5800
Fax: 617-994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com
 and
BERGER & MONTAGUE, P.C
Shanon J. Carson
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Tel. 215-875-3053
scarson@bm.net
sschalman-bergen@bm.net
 and
JORDAN LEWIS, P.A.
Jordan Lewis
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel. 954-616-8995
Fax: 954-206-0374
Email: jordan@jml-lawfirm.com

*Counsel for Plaintiff Armijo and All Other Class Members*

**I HEREBY CERTIFY** that on March 22, 2018, I caused the foregoing to be filed

electronically through the CM/ECF system, which caused all parties or counsel of record to

be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jessica G. Scott, scott@wtotrial.com
Rebecca S. Kenny, rsk@madisonlaw.com
Jason W. Norris, jason.norris@fedex.com
*Counsel for Defendant FedEx Ground Package System, Inc.*

Bauman, Dow & Stambaugh, P.C.
By:  */s/ Cynthia L. Weisman*
Cynthia L. Weisman