IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAIME LOREE ARMIJO, on behalf of herself and
all others similarly situated,

       Plaintiff,

v.                                 Civil No. 17-00440 RB/KK

FEDEX GROUND PACKAGE SYSTEM, INC.,
a foreign company,

       Defendant.

**PLAINTIFF'S OPPOSED RENEWED MOTION FOR CLASS CERTIFICATION
AND SUPPORTING MEMORANDUM**

Pursuant to the Court's Memorandum Opinion and Order (Doc. 86), Plaintiff

Jaime Loree Armijo submits her Renewed Motion for Class Certification under Fed. R.

Civ. P. 23(a)(1)-(4) and 23 (b)(3) for an order certifying the following:

> All **persons** who (1) were signatories and authorized officers (2) on behalf of an entity (3) that contracted with either FedEx Ground System, Inc., or FedEx Home Delivery, Inc., to provide delivery services (4) and whose contract (known by the FedEx entities as the "IC" contract) classified the contracting entities as independent contractors (5) and who drove at least 32 hours a week (6) for at least 20 weeks within a given year (6) from April 11, 2014 forward.

"**Persons**" are also referred to in this brief as "**drivers**." All references in this brief

to "FedEx" includes both FedEx Ground System, Inc., and its subsidiary, FedEx Home

Delivery, Inc. This revised definition changes the following:

- It is limited to only those **drivers** who signed FedEx's so-called "IC" ("Independent Contractor") Operating Agreement.

- <u>The revised definition's class period is amended to reflect the fact that some **drivers** continue to operate under FedEx's "IC" Operating Agreement</u>. As of the filing of this motion, the 10–15 **drivers** who operate out of FedEx's Farmington N.M. terminal continue to operate under the FedEx "IC" Operating Agreement.[1]

- <u>The revised definition accepts FedEx's formulation, derived from New Mexico unemployment compensation law, that 32 hours a week, minimum, represents full-time employment as calculated weekly</u>.[2]

- <u>The revised definition further accepts New Mexico unemployment compensation law that defines "employer" to be an entity whose employees work less than 20 weeks during the previous year before seeking unemployment compensation</u>.[3] *In combination, then, the revised definition excludes all **drivers** who did not drive at least 32 hours a week for at least 20 weeks within 12 months at any time during the class period.*

- ***Based on the tables provided by FedEx's expert in its initial class certification opposition (Doc. 76), at least 42 drivers meet all of the class definition's requirements. These drivers are ascertainable now -- down to their FedEx identification number -- which resolves any concern that class members cannot be identified.***

## I.    INTRODUCTION

In 2007, a California state appellate court affirmed a trial court that held that

FedEx Home and Ground drivers

were FedEx employees, not independent contractors, and that they had not been indemnified for any of the expenses at issue. The court described the Operating Agreement as "a brilliantly drafted contract creating the constraints of an employment relationship with [the drivers] in the guise of an independent contractor model"—because FedEx "not only

---

[1] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.) 105:5–106:8.

[2] Doc. 76, FedEx Resp., p. 34.

[3] NMSA § 51-1-42 (" '[E]mployer' includes: [] an employing unit that[,] unless otherwise provided in this section, paid for service in employment [] for some portion of a day in each of twenty different calendar weeks during either the current or the preceding calendar year…' ").

has the right to control, but has close to absolute actual control over [the drivers] based upon interpretation and obfuscation."

The court found, in addition, that the drivers are "totally integrated into the  [FedEx] operation," that they perform work essential to FedEx's core business, that they are required to work exclusively and full time for FedEx that their customers are those assigned to them by FedEx, that no specialized skills are required, that they must wear uniforms and conform absolutely to FedEx's standards and that, in the end, each driver has a "job" with "little or no entrepreneurial opportunities." Although the drivers provide their own trucks and equipment, FedEx is involved in the purchasing process, providing funds and recommending vendors.

The essence of the trial court's statement of decision is that if it looks like a duck, walks like a duck, swims like a duck, and quacks like a duck, it is a duck.[4]

The California decision resonated with FedEx drivers around the country and triggered literally dozens of parallel lawsuits, including this one.

## II.   NEW MEXICO'S OVERTIME LAW

Armijo's single legal count[5] is brought under NMSA 1978, § 50-4-22(D):

An employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours. For an employee who is paid a fixed salary for fluctuating hours and who is employed by an employer a majority of whose business in New Mexico consists of providing investigative services to the federal government, the hourly rate may be calculated in accordance with the provisions of the federal Fair Labor Standards Act of 1938 [29 USCS §  201 et seq.] and the regulations pursuant to that act; provided that in no case shall the hourly rate be less than the federal minimum wage.

The statute may be enforced civilly via NMSA 2013 § 50-4-26 and provides for damages equal to the amount of unpaid overtime, plus a liquidated damages multiplier of two.[6] The statute of limitations is three years.[7]

---

[4] *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10 (Cal. Ct. App. 2007).

[5] Doc. 1, Complaint, ¶¶ 53-59.

[6] NMSA 1978, § 50-4-26C.

[7] NMSA 2009, § 37-1-5.

Two aspects of the overtime law warrant special comment. *First*, the rights conveyed by the overtime law "are nonnegotiable, meaning that they cannot be waived by private law, including the worker's and the employer's mutual agreement."[8] *Second*, the overtime law "is a statute with a remedial purpose and [] must be construed liberally to accomplish that purpose."[9]

The Wage Act's protections cover "employee[s]," which it does not define. New Mexico courts have concluded that the federal Fair Labor Standards Act's [10] "economic realities" test is used to determine whether a person is an employee under the Wage Act.[11] The Tenth Circuit has defined the "economic realities" test as:

- the degree of control exerted by the alleged employer over the worker;
- the worker's opportunity for profit or loss;
- the worker's investment in the business;
- the permanence of the working relationship;
- the degree of skill required to perform the work; and
- the extent to which the work is an integral part of the employer's business.[12]

An unpublished New Mexico case[13] *adds* the following considerations:

- whether the alleged employer has the power to hire and fire workers;
- whether the alleged employer supervises and controls employee work schedules or conditions of employment;

---

[8] *Self v. UPS,* 1998-NMSC-046, ¶ 14; 126 N.M. 396, 402, 970 P.2d 582, 588 (N.M. 1998).

[9] *Dir., Labor & Indus. Div., N.M. DOL v. Echostar Communs. Corp.*, 2006-NMCA-047, ¶ 7, 139 N.M. 493, 495, 134 P.3d 780, 782 (N.M. Ct. App. 2006).

[10] 29 U.S.C. § 201, *et seq.*

[11] *E.g., Garcia v. Am. Furniture Co.*, 1984-NMCA-090, ¶ 17, 101 N.M. 785, 689 P.2d 934, 938 (N.M. Ct. App. 1984), *cert. denied,*

[12] *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

[13] *Padilla v. American Federation of State, County and Mun. Employees,* No. 11-1028 JCH-KBM (D.N.M. March 28, 2013).

- whether the employer determines the rate and method of payment;
- whether the alleged employer maintains employment records;
- whether workers accrue sick or annual leave; and
- whether the activity is less than a full-time occupation.

Three aspects of this test warrant comment. *First*, consistent with the FLSA from which the "economic realities" test is borrowed, "courts apply a capacious 'economic reality' test to determine the scope of employee coverage."[14] *Second*, "[i]t is well settled that the economic realities of an individual's working relationship with the employer – not necessarily the label or structure overlaying the relationship – determine whether the individual is an employee [under the test]."[15] *Third*, "[t]he key question is whether the person or entity possessed the power to control the workers in question."[16]

### III.   COMMON FACTS

Returning to *Estrada*'s "duck test," FedEx **drivers** <u>look</u> the part of employees. They wear FedEx uniforms,[17] they drive FedEx-marked trucks,[18] they deliver and pickup parcels whose shippers arrange transport from FedEx[19] and pay FedEx for such service.[20] **Drivers** operate from FedEx terminals,[21] complete daily FedEx reports,[22] are

---

[14] *Perez v. ZL Rest. Corp.*, 81 F. Supp. 3d 1062, 1071 (D.N.M. 2014).

[15] *Acosta v. Jani-King of Okla., Inc.*, 2018 U.S. App. LEXIS 27984, *6 (10th Cir. Oct. 3, 2018).

[16] *Astudillo v. U.S. News & World Report*, 2005 U.S. Dist. LEXIS 92, *3-4 (S.D.N.Y. Jan. 6, 2005)(internal citations, quote marks and brackets omitted).

[17] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 130:12-21.

[18] *Id.,* 96: 4-7.

[19] *Id.,* 151:21–152:6.

[20] *Id.,* 153:10-19.

[21] *Id.,* 14: 6-10.

[22] *Id.,* 19:21–20:12.

disciplined by FedEx terminal managers[23] and are indemnified by FedEx.[24] **Drivers** are paid on a piecework basis,[25] which "[t]he Tenth Circuit has declared … is more like wages than an opportunity for profit."[26] And digging deeper, FedEx's control (the primary "economic realities" consideration) is manifest at the inception of the **drivers**' relationship with FedEx, which requires them to buy both a the route and truck[27] before FedEx agrees to award "contractor" status, making it economically unfeasible for **drivers** to walk away from the Operating Agreement.[28]

FedEx monitors **drivers** through a "Daily Service Worksheet" that shows the percentage of delivered packages, and FedEx uses it to address low delivery percentages.[29] FedEx also maintains a centralized customer complaint system; once a complaint is lodged, FedEx managers "sit down with the [driver], try to figure out what was going on, depending on what was said, and then we would also reach out to the customer and get their [version of] what happened, and then kind of go from there."[30]

---

[23] *Id.*, 181:3-15; Doc. 67-8 (bates FXG-ARMIJO 113-130).

[24] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 100:19-20.

[25] Doc. 76, FedEx Resp., p. 32.

[26] *Craig v. FedEx Ground Package Sys., Inc.*, 300 Kan. 788, 823-24 (Kan. 2014)(internal quotes omitted)(citing *Dole v. Snell*, 875 F.2d 802, 809 (10th Cir. 1989)).

[27] Doc. 67-2 (bates FXG-ARMIJO 870-71); *see generally* Doc. 67-1 (Armijo Dep.) at 123-24.

[28] Doc. 67-1 (Armijo Dep.), 169:15–19: "[N]obody wants to challenge that because we're all in, so, you know, you have $65,000 on the table. You're not going to go challenge anybody because you're in jeopardy of losing that."

[29] *Id.* at 60:19-22.

[30] *Id.* at 30:14-18.

FedEx determines whether the complaint is "charged" to the driver.[31]  A driver with too many "charged" complaints will be disciplined.[32]

And there's more, summarized in a Common Evidence table below.

| Common Evidence Table | |
|---|---|
| **"Economic Realities" Elements** | **Classwide Evidence** |
| The degree of control exerted by the alleged employer over the worker | **Control of Vehicle**<br>• Q: "There were certain types of vehicles that FedEx required? "<br>A: "There are types of vehicles that FedEx allows a contractor to choose."[33]<br><br>• Q: "FedEx has certain requirements for the trucks that are used by the contract holders or the **drivers**, correct?"<br>A: "I can't answer what the specifics are, but I do know there are some."[34]<br><br>Q: "And those minimum qualifications are FedEx's minimum qualifications, not DOTs?"<br>A: "Correct."[35]<br><br>**Control of Route**<br>• Q: "It was FedEx Ground's decision to carve out a certain geographic area and call that a [route]?"<br>A: "We would – upon the implementation, we would have the area defined…"[36]<br><br>**Required Return to Terminal**<br>• Q: "When they do have pickups, they are required to go to the station at the end of the day?"<br>A: "Yes."[37] |

---

[31] *Id*. at 68:5-69:5.

[32] *Id*. at 69:9-11.

[33] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 68:18-22; *see also* Doc. 62-1, bates Armijo_31-32, and Doc. 65-1, bates Armijo_110-111 (Addendum 1 to Operating Agreement).

[34] Lewis 10-19-18 Second Decl., **Ex. B** (Olsen Dep.), 27:8-13.

[35] *Id*., 27:24-28:2.

[36] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 45:14-22.

[37] Lewis 10-19-18 Second Decl., **Ex. B** (Olsen Dep.), 23:17-19.

|  | Q: "So the fact that one is Home Delivery and one is Ground, there's no difference in how they perform that portion of their job?"<br>A: "That would be a true statement."[38]<br><br>**<u>Control of Business Opportunity</u>**<br>• Q: "Could a Home Delivery guy say, 'hey, I can get this even faster, we'll do it from and an extra 20 [dollars]."?<br>A: "No."[39]<br><br>• Q: "Do the … in New Mexico between the years 2013 and 2017 did FedEx Ground [**drivers**] have the right to add additional layers or levels of service to FedEx – for FedEx clients?"<br>A: "No. A FedEx [**driver**] could not add additional layers of service."[40]<br><br>**<u>Control of Daily Schedule</u>**<br>• Q: "The first line in Paragraph 62 [of Olsen's declaration, Docket Entry #76-3] reads 'A Ground [**driver**] can decline to pick up or deliver a package that is not in its [route].' Isn't – is the corollary that a Ground [driver] cannot decline to pick up or deliver a package if it is in its PSA?...<br>A: "It can decline, but it would be – it would be against the contract, the Operating Agreement, yes."[41]<br><br>• "[**Drivers**] are contractually obligated to service all packages in their [routes] each day…"[42]<br><br>• "[**Drivers**] may not simply refuse to make deliveries or pickups of certain packages in their [routes.]"[43]<br><br>• "For instance, if a truck comes in late from Arizona because it's snowing and I need to drive an hour and a half to get through the snow, I still have to wait for that truck to come in and get unloaded before I can take my vehicle with my packages, supposedly, but they're not, because I can't even do anything with them, without first getting FedEx's approval."[44] |

---

[38] *Id.*, 24:17-19 & 25:1.

[39] *Id.*, 36:13-16.

[40] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 158:24–159:6.

[41] Lewis 10-19-18 Second Decl., **Ex. B**, (Olsen Dep.), 40:9-24.

[42] Doc. 76-3, Olsen Decl., at ¶ 60.

[43] *Id.*, at ¶ 61.

[44] Lewis 3-22-18 First Decl. Ex. B (Armijo Dep.), at 165:25–166:22.

|  | **Take-It-Or-Leave-It Contract**<br>• Where FedEx adds Operating Agreement addenda and **driver** refuses to accept, **driver** may continue under old Operating Agreement only until Agreement expires, then **driver** is terminated.[45]<br><br>**Control of Vehicle Color**<br>• Q: "Are [**drivers**' trucks] all required to be dressed in 'FedEx white'?"<br>A: Exception was "[v]ehicles that were … in the system prior to the particular color that FedEx wanted." Vehicles in operation before 2000 were not required to be repainted.[46]<br><br>**Control of Vehicle Branding**<br>• A: "[S]ince FedEx Ground provided the decals, there were guidelines of how big and where the decal should be placed on the vehicle."<br>Q: "And the decals were required to be placed on Ground and Home vehicles in New Mexico in the period 2013 to 2017?"<br>A: "Yes, sir."[47]<br><br>**Control of Route Sales/Transfers**<br>• Q: "FedEx has the right to refuse to accept a [driver's route] sale, doesn't it?"<br>A: "FedEx has the right under the agreement, based off of two criteria; one is scale, the other is an individual's ability to meet the terms of the agreement."[48]<br><br>**Control of Vehicle Appearance**<br>• A: "The Operating Agreement has a section, I cannot speak verbatim to it, but it talks about an individual's appearance …. [that is] reasonable to customer expectations."[49]<br><br>• A: "The [driver] has an obligation to remove the vehicle from providing services if it has what they've agreed to in their agreement body damage or extraneous markings."[50]<br><br>**Control of Package Pricing**<br>• Q: "Who sets the charges for different types of packaging services – courier services?"<br>A: "I have no idea. I assume the sales and marketing department." |
|---|---|

---

[45] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 62:2-7, 119:11–120:22.

[46] *Id.*, 69:17-70: 7.

[47] *Id.*, 128:10-16.

[48] *Id.*, 134:20–135:1.

[49] *Id.*, 147:15-19.

[50] *Id.*, 96:4-7.

| | |
|---|---|
| | Q: "FedEx **drivers** don't?" <br> A: "No."[51] <br><br> **Control of Driver Appearance** <br> • Q: "Was there a time beginning 2013 when FedEx Home and Ground **drivers** were required to wear FedEx uniforms? <br> A: "An individual providing services for a [driver] had to meet the obligations of their agreement, which is to wear a FedEx – a uniform that was – had FedEx's name on it."[52] |
| The worker's opportunity for profit or loss[53] | • Q: "Am I correct that routes are configured so that it basically occupies a **driver's** full day?" <br> A: "I can't agree to that, but I do know in the contract somewhere it states that we try to utilize, you know, the purpose of the van for the entire day, economies of scale for the [**driver**.]"[54] <br><br> •Q: "Generally the experience is that the [route] requires 9 to 11 hours to fully service start to finish, terminal to conclusion?" <br> A: "Generally we – based off of what our Operating Agreement states is we want to fully utilize the contractor's vehicle."[55] <br><br> • Q: "And it's not FedEx's – it is FedEx's intent … to occupy fully a driver's vehicle for a workday?" <br> A: "Based on what we have outlined in the agreement, the intent is to fully utilize the contractor's vehicle."[56] |

---

[51] *Id.*, 151:21–152:2.

[52] *Id.*, 130:12-21.

[53] *See Craig,* 300 Kan. at 824 ("To truly have the ability to make a **profit,** a business owner must have control over the amount of revenues generated and control over the amount of expenses incurred. Under FedEx's compensation formula for a class member—one who drives his or her vehicle full time—the only practical way to increase 'profits' is to increase the number of packages the driver delivers in a day. FedEx's required specifications for the vehicles, tools, equipment, materials, and clothing a driver must use makes any significant reduction on the expense side impracticable.").

[54] Lewis 10-19-18 Second Decl., **Ex. B** (Olsen Dep.), 41:23–42:5.

[55] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 46:17-23.

[56] *Id.*, 48:5-11. *See also Craig*, 300 Kan. at 823-24 ("The Tenth Circuit has declared that 'toiling for money on a piecework basis is more like wages than an opportunity for profit.' ")(internal quote marks and citation omitted).

| The worker's investment in the business | Purchase or route and vehicle required. [57] |
|---|---|
| The permanence of the working relationship[58] | • A: "The contracts were – after the initial term that was selected, they were – the contract was an evergreen contract, so it would renew automatically unless one party provided the other 30 days written notice that we were non-renewing."[59] |
| The degree of skill required to perform the work[60] | • Q: "Were there any other specific requirements of licensure that FedEx required of its Ground and Home **drivers** in New Mexico between 2013 and 2017?"<br>A: "If a [driver] has a valid driver's license in the state of New Mexico … the answer would be no."[61] |
| The extent to which the work is an integral part of the alleged employer's business[62] | • Q: "Can you describe to me what you understand the core mission of FedEx Ground to be?"<br>A:" FedEx Ground's mission is to utilize contracted service providers to perform pickup and delivery services in a network across the nation, to move packages for shippers and recipients, and to provide accurate and timely information."<br>Q: "Okay. And the same question for FedEx Home. How would you describe FedEx's – FedEx Home's core mission?"<br>A: "FedEx Home's core mission was to provide a residential delivery and pickup service utilizing contracted service providers Tuesday through Saturday in an effort of a nationwide network to provide Shippers an ability to ship and – to customers across the country." |

[57] Doc. 67-2 (bates FXG-ARMIJO 870-71); *see generally* Doc. 67-1 (Armijo Dep.) at 123-24.

[58] *See Craig*, 300 Kan. at 817 ("A short-term or intermittent relationship is more typical with respect to independent contractors. On the other hand, in an employer/employee relationship, a worker expects to be engaged for an indefinite period of time. *See Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989) (expectation to work for employer indefinitely is indicative of employer/employee relationship)").

[59] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 84:13-17.

[60] *See Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 995 (9th Cir. 2014)( "The fourth factor, the skill required in the occupation, also favors plaintiffs. FedEx **drivers** need no experience to get the job in the first place and [the] only required skill is the ability to drive.").

[61] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 183:2-11.

[62] *See Craig*, 300 Kan. at 815 ( "Where the services that a worker performs for a principal are an integral part of the principal's business, the scale tips in favor of that worker being an employee. Businesses do not ordinarily trust their core functions to independent contractors, over which the business has minimal control.").

| | Q: "And your description of the mission, that would include FedEx New Mexico Home and Ground **drivers**? There's nothing unique about them that pulls them out of what you understand the mission to be?"<br>A: "That's correct."[63] |
|---|---|
| **Elements added by the unpublished *Padilla* case** | **Classwide Evidence** |
| *Whether the alleged employer has the power to hire and fire workers* | • Q: "FedEx has the right to reject an applicant who wishes to drive for a **[driver]**?....<br>A: "FedEx has the right to look at the [DOT] regulations and determine if an individual meets qualifications... FedEx as a DOT carrier has the authority to increase the requirement in certain categories?"<br>Q: "Okay. And what increased requirements are we talking about?"<br>A: [] "If someone got a DUI, based on DOT regulations, it's a 12-month disqualification for the first occurrence. It's a lifetime disqualification for a second. FedEx Ground [and Home] made a determination during this time frame that it would be a lifetime disqualification if somebody had a DUI."[64]<br><br>Q: "Are there any other requirements, qualifications that are distinct from the DOT, qualifications that are also included as addendum or within the terms of the Operating Agreement?"<br>A: "There are other – there are other requirements or there are other stipulations within the addendum. I can't recall of them."[65]<br><br>• A: "A driver...  [with] less than a year's driving within a three-year period and they have six months driving, then there is a piece of the addendum that states that if an individual has six months of driving experience, then they can attend a qualified school..."<br>Q: "And the qualifications that are outlined in the addendum, those are not DOT qualifications, those are FedEx qualifications?"<br>A: "Those are qualifications, to my understanding, that FedEx put in place."[66] |
| *Whether the alleged employer supervises and controls employee work schedules or conditions of employment*[67] | • A: "At the end of the day, the contractor has a printout that shows their activity for the day, and on that form they put down their information for their vehicle, they put down their driver's on-duty time and off-duty time, and they |

---

[63] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 39:8–40:17.

[64] *Id.*, 79:13–80:9.

[65] *Id.*, 86:25–87:6.

[66] *Id.*, 117:3-18; *see also* 181:3-15, and Doc. 67-8, bates FXG-ARMIJO 114.

[67] *See Craig*, 300 Kan. at 818-19 ("[W]hile FedEx does not set a time certain that a driver must appear at the terminal or a time certain that a driver quits for the day, it sets other

| | |
|---|---|
| | sign the form at the end to ensure that they've reviewed it, that all the pickups have been made, all the deliveries are accurate, so they're basically reviewing their sheet at the end of the day for the activity of their driver. The individual driver reviews their activity that they conducted at the end of the day and the contractor has the ability to review it the next morning as well."[68] |
| *Whether the alleged employer determines the rate and method of payment* | • Q: "The method by which the payments are calculated, is that the same? The same for Home and Ground?"<br>A: "Correct, just different amounts."[69]<br><br>• Q: "The manner in which Home and Ground [**drivers**] were compensated in New Mexico in 2013 to 2017 … that was spelled out in the Operating Agreement and various addenda?"<br>A: "Yes."<br>Q: "Okay. And other than rejecting a – an addenda with maybe a change in the compensation structure, those terms were not negotiable?"<br>A: "That's correct."[70] |
| *Whether the alleged employer maintains employment records; whether workers accrue sick or annual leave* | • Q: "And is the form then stored in the contract holder's file or is there a different file for somebody who is working for the contract holder?"<br>A: "It's held in the contractor file."[71]<br><br>• Q: [The annual compliance disclosure form,] that's a form that FedEx requires Home and Ground **drivers** to complete? |

rules and conditions that effectively outline the hours of work. First, **drivers** are required to provide service on the days that FedEx is open for business, and FedEx retains the authority to change the days of service. There is no set time that a driver must report to the terminal, but packages can only be picked up during the hours that a terminal is open, and all packages are expected to be delivered the same day. Further, FedEx can require that certain packages be delivered or picked up within a specified time frame when so requested by customers. For instance, the company offers its home delivery customers the option to have packages delivered between 5 p.m. and 8 p.m., and **drivers** must honor that time frame or have another driver make the delivery. **Drivers** who only deliver packages are not required to return to a FedEx terminal at the end of the day unless they have collected C.O.D. charges or have undelivered packages. **Drivers** who pick up packages from customers must return to the terminal by a certain time and perform a 'check-in' process.").

[68] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 52:8-19.

[69] *Id.*, 115:10-21.

[70] *Id.*, 184:7-20.

[71] *Id.*, 54:6-9.

| | |
|---|---|
| | A: "It's a – it's an online – they answer certain questions online and it generates a form, yes, sir.<br>Q: "FedEx maintains a copy?"<br>A: "We maintain a copy."<br>Q: "And those files are organized by [**drivers**]?"<br>A: "Organized by the name of the [**drivers**] contracting with FedEx, yes."[72] |
| *Whether the activity is less than a full-time occupation*[73] | • Q: "Am I correct that routes are configured so that it basically occupies a **driver's** full day?"<br>A: "I can't agree to that, but I do know in the contract somewhere it states that we try to utilize, you know, the purpose of the van for the entire day, economies of scale for the [**driver**.]"[74] |

All of this evidence – pro and con - can be applied across the proposed class.

## IV.  ARGUMENT

### A.  Rule 23 Legal Standard

Armijo's motion is brought under Fed. R. Civ. P.  23, which requires her to satisfy: (i) all the requirements of Rule 23(a); and (ii) one of the three requirements of Rule 23(b).  Armijo bears the burden of showing that the requirements are met,[75] "but, in doubtful cases, class certification is favored."[76]

---

[72] *Id.*, 106:24–107:18.

[73] *Craig,* 300 Kan. at 819 ("It would not be unusual for an independent contractor to be concurrently working on several projects at a given time, whereas working full-time all the time, for one entity connotes an employment scenario.").

[74] Lewis 10-19-18 Second Decl., **Ex. B** (Olsen Dep.), 41:23–42:5.

[75] *See Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978).

[76] *Abraham v. WPX Energy Prod., LLC,* 322 F.R.D. 592, 616 (D.N.M. 2017)(citing *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968)("[T]he interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action.").

**B.     Rule 23(a)(1)-(4)**

*1.     Numerosity*

Rule 23(a)(1) (commonly referred to as "numerosity") requires that the class membership be sufficiently large to warrant a class action, because the alternative of joinder is impracticable. While "[t]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable,"[77] other permitted considerations include the location and distribution of class members, and the practical viability of individual suits.[78]  All of these elements above favor certification. Based on FedEx's own expert report, there are *at least* 42 class members, with the possibility that more will be included because 10–15 **drivers** are still operating under the IC Operating Agreement at FedEx's Farmington NM terminal.[79] (To verify this count, plaintiff's counsel enlarged  FedEx's expert's table (Doc. 76-5) to measure the number of weeks within a year the **drivers** had worked more than 32 hours.) At minimum, class members are found throughout New Mexico. Many have likely left the state (plaintiff Armijo temporarily moved to California to take care of her ailing mother). And there is nothing

---

[77] *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 662 (D.N.M. 2016)(quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993)).

[78] *Schell v. OXY USA, Inc.*, 2009 U.S. Dist. LEXIS 65568, *6-7 (D. Kan. July 29, 2009)("This is a fact specific inquiry, and there is no set formula for determining if the class is so numerous that it should be certified. [] Further, numerosity and practicability of joinder are not determined simply by the number of potential class members, but instead depend on factors such as location and distribution of class members, and the practical viability of individual suits.").

[79] Lewis 10-19-18 Second Decl., **Ex. A** (Tangi Dep.), 105:5–106:8.

about the way FedEx has defended this lawsuit, or any of the dozens of others it has

defended, that suggests that a single driver reasonably can prosecute an individual

lawsuit. These cases are too expensive for a single driver to front the litigation costs.

The narrowing of the proposed class definition also addresses, and defeats,

FedEx's main argument in the prior briefing – that class members cannot be identified.[80]

Here, Armijo is able to identify class members down to their FedEx identification

number.  The more precise class definition also easily satisfied standing, which "is a

jurisdictional element that must be satisfied prior to class certification."[81]

### 2.    *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the

class."  Even "factual differences in the claims of the individual putative class members

should not result in a denial of class certification where common questions of law

exist."[82]  A single common question will satisfy Rule 23(a)(2) but the question must be

one "that is central to the validity of each one of the claims."[83] There is a <u>single</u> critical

question in this case: whether –- based on the common evidence (discussed above)

applicable to all persons who meet the class definition -- the "economic realities" of

these **drivers** demonstrate that they were actually FedEx employees. If they are, then

the Court will apply the New Mexico Wage Act and determine who among these class

---

[80] Doc. 76, FedEx Resp.

[81] *La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985).

[82] *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 148 (D. Colo. 1996).

[83] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

members is entitled to overtime, and what is the correct formula for determining the overtime rate of pay for entitled class members.

### 3.    *Typicality*

Rule 23(a)(3) requires that Armijo's claims be typical. "This inquiry is necessarily an imprecise, 'eye-test' standard, in which the Court tries to discern whether the putative class counsel has made a reasonable effort to collect class representatives who fairly reflect the absent class members' posture in the litigation."[84] Armijo passes.

### 4.    *Adequacy*

Fed. R. Civ. P. 23(a)(4) requires that Armijo demonstrate that she and her counsel "will fairly and adequately protect the interests of the class." To satisfy this element, Armijo must show that she and her counsel (1) have no conflicts of interest with other class members; and (2) will vigorously prosecute the action on behalf of the class.[85]

As to conflicts, there are none. Armijo has the same stake in this case as all other class members. There is no conflict, real or theoretical. Similarly, there is no conceivable showing that her lawyers are somehow conflicted. As to the second element, there is no doubt but that Armijo has vigorously pushed this action and will continue to do so. Armijo has done everything required: she commenced this case, answered interrogatories, produced hundreds of pages of documents, and sat for a 7 hour and 5-

---

[84] *Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 440 (D.N.M. 2015).
[85] *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

minute deposition, where she demonstrated her understanding of the case.[86] As for her lawyers, their work demonstrates their competence, but to the extent a more developed record is necessary, they have either submitted supporting declarations,[87] or can direct the Court's attention to various instances in which they have been held to be "adequate" in similar litigation, including litigation brought by drivers against this same defendant.[88] Albuquerque local counsel did not submit a declaration.

## C.     Rule 23(b)(3)

Here, Armijo seeks certification under Fed. R. Civ. P. 23(b)(3), which requires that (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) proceeding as a class is superior to other available methods of fair and efficient adjudication of the controversy.  "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)."[89]  This is the focus of FedEx's other main defense -- arguing

---

[86] Doc. 67-1 (Armijo dep.), 50:10-51:17:
    **Q:** "What is your understanding of what this litigation is about?"
    **A:** "So basically, I – I know that I'm the face of FedEx. I'm speaking for a number of people."
    **Q:** "You mean the face of the class?"
    **A:** "Of the class, yes."
    **A:** "And we'd like to just get what we deserve, which is our overtime that we never received."
[87] Lewis 10-19-18 Second Decl.
[88] *Sanders v. The CJS Solutions Group, LLC*, 2018 WL 620492, at *5 n.6 (S.D.N.Y. Jan. 29, 2018) (finding that Berger & Montague, P.C. and Lichten & Liss-Riordan, P.C. "are skilled and experienced employment class action firms with extensive experience prosecuting and settling wage and hour class and collective actions.").
[89] *Thorn v. Jefferson Pilot Life Ins.*, 445 F.3d 311, 319 (4th Cir. 2006).

that class cases involving the "economic realities" test can never predominate.[90]  That is

wrong. In *Slayman v. FedEx Ground Package Sys.*, the 9th Circuit reversed the district court

and found certification was appropriate:

> Plaintiffs also are employees under Oregon's economic-realities test. The economic-realities test is broader than the right-to-control test, covering situations where the worker is not directed or controlled by the employer but, nevertheless, as a matter of economic reality, depends on the employer. [] FedEx, as we have already held, controls the terms and conditions of plaintiffs' employment. FedEx's drivers are a permanent and important part of its business. They work every day FedEx delivers packages, for 9.5 to 11 hours per day. They are overseen by FedEx-employed managers, who evaluate their job performance and may refuse to let them work. [T]hey are also employees under the economic-realities test.[91]

The district court in *Rehberg v. Flowers Baking Co*. returned a similar result,

certifying under Rule 23 delivery truck drivers whose employment status would be

determined on the economic realities test. The court rejected FedEx's main point – that

"economic realities" cases can never be certified:

> Here, common evidence exists as to the propriety of Defendants' uniform classification of all distributors as independent contractors, which will allow the court to determine whether Defendants are liable for any violations [] related to overtime pay… .[92]

How to reconcile these different results? A closer look at the case that FedEx

highlights to vindicate its contention that "economic realities" cases cannot be certified

provides the answer, as it makes clear that its resolution is based on record defects.[93]

The record here provides the contrast. Armijo has provided common evidence

---

[90] Doc. 76, FedEx Resp., p. 24.

[91] 765 F.3d 1033, 1041 (9th Cir. 2014) (internal citation omitted).

[92] 2015 U.S. Dist. LEXIS 36929, *34-35 (W.D.N.C. March 24, 2015).

[93] *See* Doc. 76, FedEx Resp., at 24: "[T]he court simply cannot determine based on the evidence presented by the plaintiffs that all class members should be treated alike…").

consisting of sworn testimony *from FedEx* as to every "economic realities" consideration. Further, FedEx's pronouncement that "economic realities" can never be certified cannot be squared by the quantum of decisions from jurisdictions throughout the country where similar, multi-element employee status cases were certified as Rule 23 classes.[94]

As to the second half of Rule 23(b)(3), the following is relevant:

- class members' interest in individually controlling separate actions;
- the extent and nature of any litigation concerning the controversy already commenced by members of the class;
- the desirability of concentrating the litigation of the claims in the particular forum; and
- difficulties likely to be encountered in the management of a class action.

*Rehberg;*'s analysis applies with equal force here:

[I]t will allow class members to seek relief from Defendants' allegedly wrongful conduct that they would otherwise be unable to pursue because of financial limitations or fear of retaliation.... . [A]llowing the action to proceed as a class action will resolve all issues in a single case and promote judicial economy.[95]

## V.   CONCLUSION

Armijo has satisfied all the Rule 23 requires. The Court should certify the proposed class.

---

[94] *See, e.g., Williams v. Jani-King*, 837 F.3d 314 (3rd Cir. 2016)(affirming certification of Rule 23 class where employee status determined on control of work; responsibility of result; nature of work; skill required; whether one employed in distinct occupation; which party supplies tools; whether payment is by the job; right to terminate and whether work is part of regular business of defendant).
[95] *Rehberg*, 2015 U.S. Dist. LEXIS 36929, *35-36.

Respectfully submitted,
BAUMAN, DOW & STAMBAUGH, P.C.
*/s/ Cynthia L. Weisman*
Christopher P. Bauman
Cynthia L. Weisman
P.O. Box 30684
Albuquerque, NM 87190
Tel. (505) 883-3191
Fax (505) 883-3194
cpb@bdsfirm.com
cw@bdsfirm.com
        and
LICHTEN & LISS-RIORDAN, P.C.
Harold L. Lichten
Matthew Thomson
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. 617-994-5800
Fax: 617-994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com
        and
BERGER & MONTAGUE, P.C
Shanon J. Carson
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Tel. 215-875-3053
scarson@bm.net
sschalman-bergen@bm.net
        and
JORDAN LEWIS, P.A.
Jordan Lewis
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel. 954-616-8995
Fax: 954-206-0374
Email: jordan@jml-lawfirm.com

*Counsel for Plaintiff Armijo and All Other Class*
*Members*

21

I HEREBY CERTIFY that on October 19, 2018, I caused the foregoing to be filed electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jessica G. Scott, scott@wtotrial.com
Rebecca S. Kenny, rsk@madisonlaw.com
Jason W. Norris, jason.norris@fedex.com
*Counsel for Defendant FedEx Ground Package System, Inc.*

Bauman, Dow & Stambaugh, P.C.
By:  */s/ Cynthia L. Weisman*
Cynthia L. Weisman